## THOMAS S. PAGE v. WELCOME FOWLER et als.

Law of a Case.—The legal propositions decided on a first appeal, whether correctly decided or not, become the law of the case in all its subsequent stages, and will not be reviewed on a second appeal.

Pre-emption on Rejected Mexican Grant.—If a Mexican grant of land is rejected, from the time of its rejection the land becomes a part of the public domain of the United States, and open to pre-emption.

Replevin for Hay Cut on Land in Adverse Possession.—If P. is in the possession of public land, and while thus in possession, F. and others, being qualified pre-emptors, enter into actual possession in good faith to pre-empt the same, and are proceeding according to the forms of the law to perfect their pre-emption, their possession is adverse under color of title, and P. cannot maintain a personal action for hay cut by them on the land, even if P. claims under a rejected Mexican grant, and is proceeding to perfect a pre-emption under a special Act of Congress. Whether F. and others acquire actual possession is a question of fact.

Idem.—It is not material in such case whether the persons thus entering upon the

prior possession are qualified pre-emptors, provided they enter in good faith, believing themselves entitled to pre-empt, and entered for that purpose.

TAKING POSSESSION OF INCLOSED LAND.—One who enters upon land within the inclosure of another, and of which the other has the prior possession by the inclosure, and by having subjected it to his control, does not divest the prior possession of the other to any greater extent than he actually occupies the land; and if he occupies only one part, and enters upon another part and cuts hay thereon, this cutting of hay does not divest the possession of the other where the hay grew.

TITLE BY PRIOR POSSESSION.—A party in the *actual* possession of public land, to which he has no title, is to be deemed the owner as against mere intruders without title or color of title; and the fact that such party has a deed for the land from one who did not own it, does not place him in a worse position, nor does it enable a trespasser to claim that he must rely on his paper title, and not on his prior possession.

POSSESSION OF LAND.—The mere fact of cutting grass upon land in the previous possession of another, is not evidence of actual possession of the land being in the one cutting it, in an action by the former occupant for the grass or hay so cut.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The following are the first, second, and third instructions asked by the plaintiff, and refused by the Court:

1st. If the jury believe from the evidence that the possession of the land was mixed as between plaintiff and defendants at the time of the cutting of the hay and at the time of the entry of defendants upon said premises, and that it continued so mixed down to the time of the cutting of the hay and the taking thereof by the Sheriff, then the defendants did not have such a possession of the premises as entitles them to a verdict at your hands.

2d. If the jury believe from the evidence that the plaintiff was in possession of the lands upon which the hay grew as early as 1860, and had the same inclosed by a substantial fence, and thereafter continued in the possession, use, and occupation of the said lands until the time the defendants entered, and continued in the possession of the said premises after they entered thereon until the hay was cut, then the plaintiff had such a possession of the premises as would

entitle him to maintain this action so far as the question of possession is concerned.

3d. The defendants have not proven that they or either of them were persons entitled to become pre-emptioners under the laws of the United States; and if the jury believe from the evidence that the hay in question was cut upon premises in the possession of the plaintiff at the time and ever since 1860, the plaintiff is not prevented from recovering by the mere circumstance that the defendants entered upon other portions of the general tract, but not upon the part upon which the hay was cut. The proof does not show that the defendants, or either of them, are persons entitled to become pre-emptioners of land under the laws of the United States.

The defendants recovered judgment, and the plaintiff appealed.

The other facts are stated in the opinion of the Court.

W. S. Wells, and Patterson, Wallace & Stow, for Appellant.

Upon the former judgment of this Court, (28 Cal. 605, the case was left substantially standing upon the prior possession of the hay or grass and the character of the acts of defendants, as constituting a trespass or ouster. The substance of the ruling is, "that the title outstanding in the United States cannot be made the means of litigating or determining the right to the possession of real property as between conflicting claimants. The mere trespasser, who casually or temporarily enters for the purpose of severing or removing property attached to and forming a part of the realty, cannot invoke the rule, for he does not hold the adverse possession;" and the conclusion reached in that case was that the defendants should have been admitted to show that their possession was adverse to the plaintiff.

On the second trial, however, the Court below treated the evidence referred to in the former opinion as conclusive upon the question to which it was held material, and virtually

excluded the question from the consideration of the jury, and thereby deprived the plaintiff of the benefit of his prior, actual, and exclusive possession in aid of the right claimed by him. The refusal of the Court to submit any question as to our possession or its character to the jury; the instruction that our exhibition of a deed from Vallejo, though requisite and necessary, under the law of 1863, to perfect our title under the United States, deprived us of all the benefit of our prior acts of possession; the ruling that entry under the pre-emption law of the United States was entry under claim or color of title, and as such must be extended to the legal limit of a pre-emption claim—all, not only in obedience to but far beyond the tenor of the former opinion, placed the plaintiff in a position where he had no opportunity to present the case in such a manner as to avail himself of the actual character of his possession or the real character of defendants' entry and subsequent acts.

At every stage of the case, thus far, the question as to the character of the possession of defendants seems to be assumed against the plaintiff, and their mere possession, coupled with their intent, make the turning point of the case. We contend, however, that the acts were such as we may claim to be mere trespasses, and that the mere fact that we might have maintained ejectment does not necessarily fix or conclude their legal character, for, in aid of our remedy, while we might elect to consider ourselves disseized of the entirety of our land, this gives the defendants no right to qualify their wrongful act.

The pre-emption laws point to nothing but settlement and occupancy, and do not sanction the idea that force or fraud in the invasion of premises is to be encouraged thereby. (*Lovett* v. *Noble*, 1 Scam., Ill., 170; *Brown* v. *Throckmorton*, 11 Ill. 529; *Wincher* v. *Shrewsbury*, 2 Scam. 283; *United States* v. *Brown*, 4 McLean, 378; *Burgess* v. *Gray*, 16 Howard, 65; Opinions of Attorney Generals, Vol. II, p. 524; Vol. IV, pp. 405, 493.)

We submit that in cases like the one at bar parties are to

be considered as standing upon their possessory rights, and
that this consideration entitles the defendants here to be
treated as trespassers, *quoad* the subject of this suit. . In that
view of the case, the trespasser does not oust or disseize the.
prior possessor further than his actual. possession goes.
(*Clark's Lessee* v. *Courtenay*, 5 Peters, 319; *Green* v. *Siter*, 8
Cranch, 229, 230; 3 Peters, 97, 107; *Barr* v. *Gratz*, 4 Wheat.
213, 223; *Society, etc.* v. *Pawlett*, 4 Peters, 480.)¯

*William Hayes*, and *M. A. Wheaton*, for Respondents.

The appeal has evidently been taken under a misappre-
hension of the former decision of this Court, which was,
that replevin for the hay cut could not be maintained by the
plaintiff against "a defendant who has entered upon the
public lands then in the plaintiff's possession, claiming in
good faith the right to pre-empt the same, and who is pro-
ceeding according to the forms of law to perfect and enforce
his right of pre-emption." After that decision, the simple
question to be tried was, Were the defendants, at the time
the hay was cut, in the actual adverse possession of the prem-
ises whereon the hay grew? If they were, then the action
could not be maintained, even "conceding to the plaintiff
the benefit of his prior possession, and regarding him as
engaged in perfecting his claim."

The rule of law applicable to and governing the case has
been already determined by this Court on the.former appeal,
(28 Cal. 605,) and the rule as there laid down is the law of
the case on this appeal, and cannot be departed from or
varied. (*Mulford* v. *Estudillo*, 32 Cal. 131; *Kile* v. *Tubbs*,
32 Cal. 332; *Argenti* v. *Sawyer*, 32 Cal. 414; *Clary* v. *Hoag-
land*, 6 Cal. 687.)

The decision of this Court on the first appeal was that
"the case of a defendant who has entered upon the public
land then in the plaintiff's possession, claiming in good faith
the right to pre-empt the same, and who is proceeding
according to the forms of law to perfect and enforce his

right of pre-emption, is clearly within the rule laid down in *Halleck* v. *Mixer*, for although he does not claim title, he claims all the right that can be held in the land consistent with the fact of title in the United States." (28 Cal. 611.)

The rule laid down in *Halleck* v. *Mixer* is this: "The plaintiff out of possession cannot sue for property severed from the freehold when the defendant is in possession of the premises from which the property was severed, holding them adversely, in good faith, under claim and color of title." (16 Cal. 579; see, also, *DeMott* v. *Hagerman*, 8 Cow. 221; *Mather* v. *Ministers of Trinity Church*, 3 S. & R. 509; *Baker* v. *Howell*, 6 S. & R. 476; *Brown* v. *Caldwell*, 10 S. & R. 118; *Harlan* v. *Harlan*, 15 Penn. 513; *Stockwell* v. *Phelps*, 34 N. Y. 363.)


By the Court, CROCKETT, J. :

This case was here on a former appeal, and is reported in 28 Cal. 605. On that appeal the judgment was reversed and the cause remanded for a new trial. The legal propositions which arose and were decided on the former appeal, whether they were correctly decided or not, have become the law of the case, so far as they were applicable to the facts developed on the second trial. There would be no end to the litigation, if the same questions in the case once decided by the appellate Court were open to examination on every succeeding appeal. It has been so often decided by this Court that on a second appeal we will not re-examine the legal propositions decided on the first, as to render the citation of authorities unnecessary. It becomes material, therefore, to ascertain with precision what legal propositions were decided on the former appeal, in order that we may apply them to the facts on the last trial.

The action is replevin for a quantity of hay, which was cut by the defendants on the Suscol Rancho in May, 1863. This rancho was claimed by M. G. Vallejo, under a grant

from the Mexican Government; and in 1851 he sold and conveyed a portion of it to the plaintiff, who, in 1860, inclosed the portion so purchased with a substantial fence, and used and occupied the land for cultivation and pasturage. In the Spring of 1862, Vallejo's title under the Mexican grant was finally rejected by the Supreme Court of the United States, and in the Autumn of that year the defendants entered upon the premises, then in possession of the plaintiff, with the intention to pre-empt as soon as the lands were in a condition to be pre-empted each for himself a tract of one hundred and sixty acres. Each of the defendants selected a tract of that extent, caused it to be surveyed, and erected a shanty or small house on it, which house the defendants severally occupied. On the 3d March, 1863, Congress passed a special Act, entitling the purchasers under Vallejo to pre-empt at the minimum price the lands so purchased, and authorizing the extension of the United States surveys over the rancho, so as to enable the purchasers to perfect their pre-emptions. The hay in contest was cut by the defendants in May, 1863, from the lands so surveyed by them with a view to their pre-emption as soon as the Government surveys should be extended over them. But notwithstanding the entry of the defendants, the inclosure of the plaintiff remained undisturbed, and his possession, up to the time the hay was cut and afterwards, continued as it was before the entry of the defendants, except in so far as it was interrupted or impaired by the aforesaid acts of the defendants. After this action was commenced the public surveys were extended over the lands; and the plaintiff, in accordance with the special Act of March 3d, 1863, applied to the proper Land Office to pre-empt the tract purchased from Vallejo. The defendants resisted his application, and themselves applied to pre-empt the tracts severally claimed by them, under the general pre-emption laws. The Register and Receiver awarded the land to the plaintiff.

It must be conceded that when the defendants entered, the land in question, though inclosed by the plaintiff and in his

possession, was a part of the public domain. When the title of Vallejo was finally rejected, the land was thenceforth to be deemed and treated as public land, to the same extent and with like effect as if it had never been claimed under a Mexican or Spanish grant. It is not denied on either side that the title was then in the United States; and on both trials it was sufficiently established that the defendants entered with the intention to pre-empt the tracts severally claimed by them as soon as the lands were in a condition to be pre-empted under the laws then in force.

The precise point before the Court on the former appeal was founded on a ruling of the District Court upon a question of evidence. After the plaintiff rested, the defendants offered to prove that each of them possessed the qualifications requisite to entitle him to become a pre-emptor, and had filed his declaratory statement of intention to pre-empt the quarter section on which he entered and had resided since October, 1862; and that they had procured their several tracts to be surveyed by the United States Surveyor General. The Court below ruled out this evidence, and the only point decided on the appeal was that the ruling was erroneous and that the evidence should have been admitted. We held the evidence to be admissible on the ground that, "conceding to the plaintiff the benefit of his prior possession, and regarding him as engaged in perfecting his claim to the pre-emption, the evidence offered by the defendants to prove that they were taking the necessary steps to establish their claim to the pre-emptions was clearly admissible and competent, in connection with proof of their entry in October, 1862, and *actual possession of the premises* up to the time when the hay was cut in 1863, to show that during that period they were in adverse possession of the premises."

Proof of adverse possession by the defendants of the land at the time the hay was cut was held to be material and pertinent, on the ground announced in *Halleck* v. *Mixer*, 16 Cal. 579, that "the plaintiff out of possession cannot sue for property severed from the freehold when the defendant is in

possession of the premises from which the property was severed, holding them adversely, in good faith, under claim and color of title;" and we held that if the defendants entered and had actual possession of the premises, with the intention in good faith to pre-empt the same, under the circumstances which they offered to prove, such possession was adverse, under claim and color of title, within the reason of the rule laid down in *Halleck* v. *Mixer*. We say: "The rule when stated as applicable to cases where the title is outstanding in the United States, is, that the personal action cannot be made the means of litigating and determining the right to the possession of real property, as between conflicting claimants. The mere trespasser, who casually or temporarily enters for the purpose of severing or removing property attached to and forming a part of the realty, cannot invoke the rule, for he does not hold the adverse possession. The case of a defendant who has entered upon the public land then in the plaintiff's possession, claiming in good faith the right to pre-empt the same, and who is proceeding according to the forms of law to perfect and enforce his right of pre-emption is clearly within the reason of the rule laid down in *Halleck* v. *Mixer;* for, although he does not claim title, he claims all the right that can be held in the land consistent with the fact of title in the United States; and, as we have remarked, the title cannot be made use of by either party for attack or defense." The legal propositions decided on that appeal may, therefore, be summed up as follows, to wit: that if the land from which the hay was cut was public land, which had been in the possession of the plaintiff up to the time of the entry of the defendants, and if the defendants, being qualified pre-emptors, entered into the actual possession, with the intention in good faith to pre-empt the same, and were proceeding according to the forms of law to perfect and enforce their right of pre-emption, their possession was adverse under claim and color of title, in such sense as to preclude the plaintiff from maintaining a personal action for the hay cut by the defendants from the lands so in their

adverse possession; and this, too, notwithstanding the plain-
tiff may have been proceeding to perfect his right to pre-empt
the land under the special Act of March 3d, 1863.   On that
appeal no question was raised or decided as to the *fact* of the
actual possession by the defendants of the land from which
the hay was cut. We assumed it as either proved or admitted
for the purpose of the appeal, that the defendants from the
time of their entry, "resided on and had possession of the
land;" and we neither expressed nor intimated an opinion
on the point whether an entry on a part of the land,
under the conditions stated, gave them a sufficient pos-
session of the whole to bring them within the rule which
we announced.    It was, therefore, a legitimate and per-
tinent subject of inquiry on the second trial, whether the
defendants, when the hay was cut, had the possession, either
actual or constructive, of the premises on which it grew.  If
they had no possession, it is evident, beyond cavil, that their
case does not come within the rule announced in *Halleck* v.
*Mixer*, and in this case on the former appeal. To bring them
within the rule, it was incumbent on the defendants to estab-
lish, on the second trial, that they had the possession of the
premises on which the hay grew at the time it was cut.    It
was admitted "that there was no contest in the case as to
the sufficiency of the fence to constitute possession in the
plaintiff up to the year 1862, at the time of defendants'
entry."   The prior possession thus admitted was sufficient
to enable the plaintiff to maintain the action, unless the
defendants brought themselves within the rule announced in
our former decision.   To do this, it was incumbent on them
to prove—unless the fact was admitted—that they had the
possession of the land on which the hay grew; and they
gave some evidence tending to establish this fact.   Stuart, a
witness for the plaintiff, testified that the defendants Knight,
Overman, Tilton, Packwood, and Robinson "were in pos-
session of the land on which the hay was cut from October
previous up to and at the time the hay was cut. No one was
in possession except them, so far as I know; they all went

in as pre-emptors." There was some other evidence of similar import. On the other hand, the plaintiff claims to have established that his prior possession continued undisturbed, except as to certain small parcels covered by the buildings and included within certain inconsiderable inclosures of the defendants, none of which embraced the land on which the hay was cut. It was, therefore, a legitimate subject of inquiry by the jury whether or not the defendants had established such a possession as was necessary to defeat the action; and on this point the plaintiff was entitled to have the law expounded by the Court in its charge to the jury. At the instance of the plaintiff, the Court charged the jury as follows:·

"If the jury believe from the evidence that plaintiff had the prior actual possession of the lands upon which the hay grew ever since 1860 up to the time that defendants entered, and that he had up to that time subjected said premises to his rule and control, and that defendants then entered into said premises, such entry did not of itself divest the possession of the plaintiff necessarily, any further or to any greater extent than the defendants actually occupied the same; and if they only occupied one or more parts of said premises, then it would not divest the plaintiff of his prior possession of the portions not actually occupied by defendants; and if defendants, being in actual occupation of only a specific part or parcel of the general tract, entered into other parts thereof and cut the hay only thereon, this would not be such a divesting of the possession of plaintiff as would prevent the plaintiff from recovering in this action."

This was a correct exposition of the law, and stated the legal proposition as strongly in favor of the plaintiff as he could reasonably have desired. The plaintiff also asked several other instructions, which were properly refused by the Court. The first may well have been refused on the ground that there was no evidence to support it, and that it

was calculated to mislead and confuse the jury. The second was substantially embraced in the instruction which was given, and its refusal could not have prejudiced the plaintiff. The same remark applies to so much of the third instruction which was refused as relates to the prior possession of the plaintiff and the entry of the defendants on other portions of the general tract. That part of it which assumes that the defendants were not entitled to become pre-emptioners was properly refused as irrelevant. That question could not be tried in this collateral action. It is not material whether, in point of fact, they were qualified pre-emptors or not, provided they entered believing in good faith that they were entitled to pre-empt the land, and entered for that purpose.

But some of the instructions, given at the instance of the defendants, and excepted to by the plaintiff, were erroneous.

The first, which declares that "the plaintiff having exhibited his deed from Vallejo, shows his title comes from him, and his title being decided invalid by the Supreme Court of the United States, is evidence against his title, and overcomes the *prima facie* evidence of title shown by possession," is not only so awkwardly worded as to render it obscure, but, if we interpret it aright, does not correctly state the law. It is so well settled by repeated decisions of this Court that a party in the actual possession of public land, to which he has no title, is to be deemed the owner, as against mere intruders or trespassers entering without title or color of title, that it is no longer open to discussion. The fact that the plaintiff held a deed from Vallejo for the land could not place him in a worse position than if he had been there wholly without title except such as flows from the mere naked possession of public land; which, as we have seen, is sufficient to support an action against a mere trespasser. To overcome this right of action, founded on actual possession alone, it was incumbent on the defendants to show that they were not mere trespassers, but that they entered in good faith as pre-emptors, and as such took possession of the land on which the hay grew. This instruction, how-

ever, informs the jury that because the plaintiff held the' deed from Vallejo, whose title has proved to be invalid, his *prima facie* evidence of title, shown by his possession, is overcome. If the jury acted on this, as a correct exposition of the law, they were obliged to conclude that the plaintiff had no standing in Court, notwithstanding he was in the actual occupation of the land when the defendants entered. From this it would follow, as a necessary sequence, that it was immaterial whether the defendants entered as mere trespassers or in good faith as pre-emptors. The plaintiff would have no action against them in either event, if this instruction be accepted as sound law. It is urged, however, on behalf of the defendants, that this instruction, if erroneous, was harmless, and did the plaintiff no injury, for the reason that the question of title was not involved and could not be tried in this action. If it be conceded that, strictly speaking, the title to the land was not involved, the instruction was, nevertheless, eminently calculated to mislead the jury and to direct their inquiry into a wrong channel. The next instruction is equally erroneous. It informs the jury that "cutting the grass is itself evidence of possession of the land on which it grew—a *possessio pedis.*" The cutting of the grass is the precise act which is complained of as a trespass, and to hold that the act which is alleged to be unlawful is itself proof that it is not unlawful, is to state a legal solecism. By the same process of reasoning, if a burglar be found entering a window, he might cite the fact of his entry as proof of his right to enter. In every action for trespass on real estate, the defendant might rely on the act of trespass as proof that it was not a trespass.

We deem it unnecessary to discuss the other instructions given at the instance of the defendants, some of which are by no means free from objection. For the guidance of the Court and counsel on another trial, we may remark that as the case stands on the facts now presented, the plaintiff, by virtue of his prior, actual possession of the land, will be entitled to recover, unless the defendants prove that they

entered in good faith with the intention to pre-empt the land on which the hay was cut, and had the actual possession of it at the time; on proof of which facts the verdict and judgment should be for the defendants.

Judgment reversed and cause remanded for a new trial, and remittitur directed to issue forthwith.