# Wheeling.

## STATE OF WEST VIRGINIA *ex rel.* JAMES M. MASON *v.* THE HARPER'S FERRY BRIDGE COMPANY,

AND

## SAME *v.* GEORGE W. GREEN,

AND

## SAME *v.* MURTHA WALSH.

Decided December 26, 1879.

(Absent, MOORE, JUDGE.)

1879
Special Term.

The State *ex rel.*
James M. Mason
*v.*
The Harper's
Ferry Bridge Co.

1. Proceedings against a party for a contempt of court are in the nature of criminal proceedings; and, when instituted at the instance of another party, when judgment is rendered, the case should be entitled in the name of the State at the relation of such person. On the trial of such a case the answer of the accused is not conclusive, but affidavits may be read against as well as for him.

2. If after the service of a *supersedeas*, issued by the Supreme Court of Appeals to an order of a circuit judge in vacation dissolving an injunction, the appellee violates the injunction, the party is in contempt of the Appellate Court and may be punished by it for disobeying its process.

3. The Supreme Court of Appeals may punish a party summarily for such a contempt. Its right to do so is inherent and essential to the existence of the court; and the discretion involved in this power is in a great measure arbitrary and undefinable, and for a contempt of this character it has been in no degree restricted by our statute-law. This court may order, that that which has been done in disobedience of its lawful process shall be undone, where justice to any person requires this course to be adopted. When the contempt is wilful, it may imprison the party; and when merely in-

advertent and reckless, it may impose a fine on the party. If a fine be imposed, the court may imprison the party, if such fine be not paid in the time prescribed by the court.

1879
Special Term.

The State *ex rel.*
James M. Mason
v
The Harper's
Ferry Bridge
Company.

4. The advice of counsel may under some circumstances be a palliation of the offence of his client in disobeying the lawful process of this court, but the extent of such palliation must depend upon the character of such advice and the circumstances under which it has been given. The offence will be palliated by such advice to the extent only of making it a reckless disobedience of the process of this court instead of a wilful contempt of this court, when the advice is hasty and inconsiderate, or where the party through carelessness has failed to give the counsel correct information as to the facts of the case.

5. In order to justify any punishment in such a case, the process of the court disobeyed must have been its lawful process.

6. By its lawful process is meant such process as the court has jurisdiction to issue. If such jurisdiction exists, its process is lawful, though it be improvidently awarded, or though on the merits of the case it ought not to have been awarded.

7. If a *supersedeas*, which this court has the power to issue, be improvidently awarded, the defendant should move to have it quashed; and he cannot, while it is in force, disobey it with impunity.

8. So, if the appellee alleges that the appellant has agreed to abandon his appeal and *supersedeas*, he may move this court to quash them; but he cannot with impunity disobey for such reason the *supersedeas* while in force.

9. The statute-law gives this court jurisdiction to grant an appeal and *supersedeas* to an order dissolving an injunction; and therefore when a petition is presented to this court, alleging that the legal effect of an order of a circuit judge made in vacation is to dissolve an injunction, it is the duty of this court to determine whether such be the legal effect of the order, and in such a case it has the power to grant an appeal and *supersedeas*.

10. In such case the *supersedeas* issued by the order of this court is lawful process; and disobedience to it will be punished by this court, though it was improvidently issued. If thus issued, the appellee should move this court to quash it, but he cannot disobey it with impunity, while it remains it force.

11. In order to afford an opportunity to a party to obtain an appeal and *supersedeas*, an order is made by a circuit judge suspending a final decree for sixty days; and the required bond is given. During these sixty days such decree is absolutely inoperative; and it leaves the parties to the suit in exactly the same situation, that they would have been in, if no such decree had been entered.

109

1879
Special Term.

The State ex rel.
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

A rule to the said defendants to show cause, if any they have, why they and each of them should not be punished for contempt of this Court:

GREEN, PRESIDENT, furnishes the following statement of the case:

James M. Mason owned a ferry across the Shenandoah river at Harper's Ferry, West Virginia, it having been established by an order of the county court of Jefferson county made March 22, 1878. On February 21, 1879, George W. Green, Murtha Walsh and others obtained from the Secretary of State of West Virginia, a certificate of incorporation by the name of the Harper's Ferry Bridge Company, for the purpose of constructing and operating a toll-bridge across the Shenandoah river at Harper's Ferry. This corporation was organized and commenced erecting this bridge within two hundred yards of the ferry of said Mason, and also commenced erecting an abutment in said river on land, in which said Mason claims he has in part the ownership, without his consent and without taking any steps to condemn the same. On July 21, 1879, said Mason filed his bill in chancery in said county court, setting out among other things these facts, and claiming that as the proprietor of said ferry he had the exclusive right of charging toll for transporting persons and things across the river within half a mile of said ferry, and that if the said Harper's Ferry Bridge Company is permitted to erect said toll-bridge, not only will he be wronged by the illegal appropriation of his land aforesaid, but also an irreparable wrong will be done him by encroaching on his exclusive franchise and destroying the value of his ferry, and that said Harper's Ferry Bridge Company is insolvent. And he prays, that they be enjoined from erecting said bridge and for other relief. The corporation as well as corporators personally were the defendants.

After notice to the defendants and argument by the

counsel of plaintiff and of defendants the court decreed that the defendants, and each of them, and their agents be, and they were thereby, restrained from proceeding further in and about the construction of the bridge in the bill mentioned, until by the exercise of the power of eminent domain in the manner prescribed by law they have acquired the right to damage the ferry-francise and other property of the plaintiff described in the bill, and to take and possess that part of the land in the bill mentioned, which will be occupied by the abutments and causeway of the bridge; but this injunction was not to take effect, until the plaintiff executed a bond with good security before the clerk of this court in the penalty of $500.00, conditioned to pay to the defendants such damages as they might sustain by reason of this injunction, should the same be dissolved. This injunction-bond was accordingly given, and the injunction was duly served.

On August 22, 1879, after legal notice the judge of the circuit court of Jefferson, by an order in vacation, made at the instance of the defendants, removed this cause into the circuit court of Jefferson; and the defendants then gave notice to the plaintiff, that on August 30, 1879, in vacation, they would move the said judge to increase the penalty of said bond. The notice was served August 23, 1879, and after taking time to consider this motion, made on the 30th of August, 1879, till September 2, 1879, the judge in vacation entered this order: "After careful consideration being of opinion that a judge of a circuit court has authority to hear and determine in vacation a motion of this character, and being further of opinion from the affidavits presented by the defendants and filed with the papers, that $500.00, the penalty of the injunction-bond heretofore executed, is insufficient, it is therefore ordered, that the motion of the defendants be allowed, and that the complainant do execute before the clerk of the circuit court of Jefferson county bond, conditioned according to law in cases of

1879
Special Term.

The State ex rel.
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

1879
Special Term.

The State ex rel.
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

injunction, in the increased penalty of $2,500.00, and with security to be approved by said clerk. And it is further ordered, that unless the said complainant or some one for him do execute the bond required by this order within twenty days from the date hereof, the injunction awarded by the county court of Jefferson in this cause shall from and after the expiration of said period of twenty days be dissolved."

From this order or decree James M. Mason, the plaintiff, applied to this court for an appeal and *supersedeas*, whcih was granted and the writ of *supersedeas* issued on October 18, 1879, returnable to December rules, 1879, the penalty of the appeal and *supersedeas* bond being fixed by this Court at $800.00. This bond was given before the clerk of the circuit court of Jefferson with approved security, on November 25, 1879; and the writ of *supersedeas* was served on November 25, 1879, on the defendants, The Harper's Ferry Bridge Company and George W. Green, and on the next day on Murtha Walsh and other defendants. But in the meantime before this appeal and *supersedeas* bond was given, and before the writ of *supersedeas* was served on any of the defendants, the circuit court of Jefferson proceeded with said cause and rendered a final decree on November 21, 1879. This decree was as follows:

"This cause came on to be heard this the 21st day of November, 1879, upon the bill and exhibits filed, the demurrer to the bill and joinder in demurrer, the answer of the Harper's Ferry Bridge Company and general replication thereto, the depositions and exhibits filed in the cause, and was argued by counsel. On consideration whereof the court being of opinion that the plaintiff has failed to make a case, which entitled him to relief in a court of equity, it is adjudged, ordered and decreed, that the bill ot the complainant be dismissed, and that he pay to the defendant its costs about its suit in this behalf expended."

Afterwards, on November 24, 1879, an order was made

by the judge in vacation, suspending the execution of said decree for sixty days, to afford the plaintiff an opportunity to obtain from this court an appeal from and *supersedeas* to this decree, this suspension to take effect on the plaintiff giving before the clerk of said court bond with approved security, conditioned according to law, in the penalty of $100.00. This bond was given, and then the *supersedeas* bond, which had been required by this court, being also given, the *supersedeas*, which had been issued by the order of this court, was issued and served as before stated. The defendants however after the service of this *supersedeas* on them commenced again to work on the erection of said bridge, and on December 2, 1879, the plaintiff in said suit, James M. Mason, gave them notice that on December 6, 1879, he would move this court to award a rule against them to show cause why they and each of them should not be punished for their contempt of this court in proceeding further in and about the construction of said bridge, after they had notice that this court had awarded an appeal and *supersedeas* to the order of the said judge in vacation, dissolving the said injunction granted by the county court of Jefferson county.

This motion having been made and sustained by the affidavit of James M. Mason and James W. Riley, and the defendants having appeared by counsel; and resisted the awarding of the rule, this court on the 6th day of December, 1869, awarded a rule against the defendants, The Harper's Ferry Bridge Company, George W. Green and Murtha Walsh, returnable before this court on the 13th day of December, 1879, requiring them to show cause, if any they have, why they and each of them should not be punished for their contempt of this court in proceeding further in and about the construction of this bridge after the service on them of said *supersedeas*.

This rule was duly served on each of these defendants; and on the return day they filed their answer under oath.

1879
Special Term.

The State *ex rel.*
James M. Mason
v
The Harper's
Ferry Bridge
Company.

They admit, that after the service on them of the *super-sedeas* aforesaid they did proceed with the building of said bridge, being advised by their counsel, that in their judgment no order, decree or other proceeding existing or in force forbade, prohibited or restrained them from pursuing the work of constructing the bridge aforesaid. They disclaim all intention or purpose by their conduct in this regard to disobey any order, mandate or command of this court, and they set forth as their justification the facts contained in the record in said suit above given, a copy of which record is filed with their answer; and they further say, that they are informed and believe, and therefore allege, that "a distinct understanding and agreement was had and made with James M. Mason by their counsel, that, if all proper facilities and co-operation should be afforded by said counsel for maturing and hearing the said cause at said October term of the circuit court of Jefferson county, then he, the said James M. Mason, would desist from and forego any and all attempts to prosecute the appeal obtained as aforesaid from the order in vacation, dated September 2, 1879." And they further say, that they "are advised and believe that every aid possible was afforded by their counsel in accordance with said agreement to obtain a speedy hearing of the cause, and that in view of all these facts their counsel advised them, as before stated; they filed subsequently as a part of their petition a letter to them of C. J. Faulkner, one of their attorneys, giving such advice. This letter is dated November 26, 1879, at Martinsburg, and is addressed to George W. Green, president of The Harper's Ferry Bridge Company. This letter is copied at length in the opinion of the court.

By consent the affidavits of C. J. Faulkner, William H. Travers, George W. Green and James M. Mason were filed on the hearing of this rule. Mr. Faulkner in his affidavit says, he is still of the opinion expressed in this letter, but he says that, when he wrote it and till after the issuing of the rule in this case, he did not know that

1879
Special Term.

The State ex rel.
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

James M. Mason had executed the suspending bond by which the final decree was suspended for sixty days. He states in detail various facts and conversations with James M. Mason, indicating his great anxiety that the cause should be finally determined at the term at which it was decided, and urging on him as counsel for the defendants to co-operate with him in obtaining a final decision of the case at that term; that in that connection he told him, if he did not have the assurance that the cause would be decided finally during that term, he would perfect his *supersedeas* to the order of Judge Hoge made in vacation. Mr. Faulkner expressed some doubts about his being able to perfect it by giving the bond, but after investigation he found that Joseph Sherry would execute the bond, and the clerk would regard him as sufficient surety; that he was unwilling to aid in urging a final decision in the absence of Mr. Travers, the principal counsel of the defendants, but at last being told by the president of The Harper's Ferry Bridge Company to do so, and he would assume the responsibility of it, he submitted his draft of a decree to the court, and Mr. Mason his; and the court was told, that the conclusion of Mr. Travers's speech would be waived; and the case was decided.

Mr. Travers, in his affidavit, states also the great anxiety of the plaintiff, Mason, to have said case decided when it was, at the October term, 1879, so that, if the decision was adverse to him, he could have it reviewed at the January term, 1880, of this court; that he said " he did not desire to avail himself of the *supersedeas* already obtained from the court of appeals to the order in vacation, and that, if the counsel of the bridge company would co-operate and aid in securing this hearing of the cause, he would abandon the appeal from the order of September 2, 1879, and would rely wholly upon the result, of which he seemed very confident, of an appeal to the Supreme Court of Appeals of the State from the final decree in the cause, if adverse to him. This agreement

1879
Special Term.

The State ex rel.
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

being thus understood, Mr. Travers did all he could to facilitate the final decision of the cause at that term. He also says he knew nothing of the suspending order made by the judge, till after the rule in this proceeding was awarded.

George W. Green, in his affidavit states, that towards the close of the term of said court, at which this cause was finally decided, said Mason approached him and urged him to insist upon Mr. Faulkner submitting the cause without further delay, saying he would be obliged, unless a final decision was made at the then term, to avail himself of the appeal and *supersedeas* already allowed by this Court, but if the said case was finally decided at that term he would not so avail himself of that appeal; and said Green urged on Mr. Faulkner to submit this cause, and it was done.

Mr. Mason in his affidavit says, that his, Green's, statement is untrue and without the slightest foundation. Green did urge him to hold up the *supersedeas* until they finished the masonry; but, he says, he gave him no promise in relation thereto. He says he has never done or said anything calculated to induce the impression that he proposed to waive the benefit of the *supersedeas* he had obtained, and until the return of the rule served he did not know that any one expected him to do so. He knew that Mr. Travers had taken the position, that the clerk ought not to receive the *supersedeas* bond after the final decree; that he knew too, that Mr. Travers was of opinion before the final decree, that if the *supersedeas* bond was given the circuit court could not hear the case on its merits until that appeal had been decided; and thereupon he told him he would hold up the *supersedeas,* so that the case might be decided, and it was then understood that the hearing would be expedited, so that an appeal from the final decision might be heard at the January term, 1880, of this Court; but he never at any time intimated a purpose not to avail himself of the *supersedeas,* if the decision of the circuit court was ad-

verse to him, and he felt indifferent as to how that court should decide; when the *supersedeas* was first received, he understood the bridge company were willing to make some concessions as to a speedy decision, in order that they might finish some masonry in the then low stage of water; and he took, or intended to take, an advantage of this anxiety, in order to force a trial at the October term.   He says that he presented the suspension order to the judge the moment the final decree was entered by the clerk; but the judge being anxious to leave by the cars, then almost due, he could not enter it then, but said he would, if it was sent to him by mail, return it the next day as an order to be entered in vacation.

1879
Special Term.
—————
The State *ex rel.*
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

This was substantially the case as presented to this Court for its determination.

*James M. Mason* and *J. J. Jacob,* for the State.

*C. J. Faulkner, W. H. Travers* and *Charles Davies,* for the respondents.

GREEN, PRESIDENT, delivered the opinion of the Court:

Two preliminary questions have arisen, which we will dispose of before deciding these cases on their merits.

The first of these questions is: Can this Court properly hear evidence in these cases, or must they be heard only on the answers of the defendants to the rules issued against them?   In proceedings of this character the weight of the authorities is in favor of the admission of other evidence than the answers of the defendants to the rule; and in our judgment this is the proper rule.   See *Crooks et al.* v. *The People,* 16 Ill. 537; *Case of J. V. N. Yates,* 4 Johns. 373; *Commonwealth* v. *Dandridge,* 2 Va. Cas. 408; *Sed vide Well's Case,* 21 Gratt. 500.   This Court will therefore read the affidavits of James M. Mason, Charles J. Faulkner and W. H. Travers, and the other affidavits filed in considering these cases.

The next enquiry is: How should these cases be en-

Syllabus 1.

1879
Special Term.

The State ex rel.
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

Syllabus 2.

tered on our order book, if judgment should be given against the defendants? The authorities hold, that before the attachment issues, the proceedings are to be entitled in the names of the parties; but afterwards, in the name of the State. See *DuBois* v. *Philips*, 5 Johns. 235; *B. & O. R. R. Co.* v. *City of Wheeling*, 13 Gratt. 57.

Supposing that the *supersedeas* awarded by this Court was in full operation and effect, when it was disregarded by the defendants, the first question to be determined is, whether such conduct by the defendants would be a contempt of this Court, of the circuit court of Jefferson county, or of the county court of Jefferson county. The general rule of course is that where a *supersedeas* is issued, or any order is made by this Court, and it is disobeyed, such disobedience is a contempt of this Court. See *McLaughlin* v. *Janney*, 6 Gratt. 609; *Smith* v. *Caldwell*, Sneed (Ky.) 341. The question is: Does an appeal and *supersedeas* to a decree or order dissolving an injunction constitute an exception to this general rule? It might at first blush seem to do so, because it might perhaps be held, that the *supersedeas* in such a case had only the effect to suspend the operation of the order dissolving the injunction, and that thus the injunction became again operative, and if violated, it would be a contempt of the court which awarded the injunction, and not of this Court which granted the *supersedeas*. But the proper view of the subject is, that the *supersedeas* issued by this Court operates *proprio vigore* to forbid the parties, on whom it is served, to do those things which the order of the circuit court dissolving the injunction permitted them to do. And though the things, thus forbidden to be done by the *supersedeas* issued by this Court, are identically the things which the injunction granted in this case by the county court forbade the parties to do, yet this *supersedeas* or new order by this Court operates itself directly on the parties, and if they do what it forbids them to do, they must answer for their contempt of the *supersedeas* to this Court which issued it.

These views of the effect of an appeal and *supersedeas* to an order or decree dissolving an injunction are deducible from the opinion of Judge Allen in *Jeter* v. *Longhorne*, 5 Gratt. 208, in which opinion all the judges concurred except Judge Baldwin.

This it would seem was also the opinion of the court in *Turner* v. *Scott et al.*, 5 Rand. 333. In that case a decree was rendered dissolving an injunction, which had been awarded. From this decree an appeal from and *supersedeas* to the Court of Appeals was had. What the order of injunction forbade was done by the party; and the Court of Appeals awarded a rule against him to show cause why he should not be attached for his contempt. They by issuing this rule appear to have regarded the conduct of the party, who violated the injunction, as in contempt of the Court of Appeals by violating their *supersedeas* after its service. It is true the court said it entertained some doubt, whether such improper conduct should be punished by the Court of Appeals, or by the chancery court which awarded the injunction, but they nevertheless issued the rule.

It seems to me therefore, that, if the *supersedeas* issued by this Court was effective and in operation, when it was served on the defendants, it must be regarded as forbidding them to act, as the order of Judge Hoge in vacation authorized them, that is, as though they had never been enjoined, and required them to act as though the injunction, which this order of Judge Hoge's dissolved, had never been dissolved, and was in full force; and that if, when this *supersedeas* was in full force, and they had notice thereof, they proceeded to put up said bridge, they were doing that which was forbidden by the said *supersedeas*, and are in contempt of this Court, and properly punishable by it.

The twenty-seventh section of chapter one hundred and forty-seven among other things provides, that "courts and judges thereof may issue attachments for contempts, and punish them summarily, in case of disobedience of

1879
Special Term.

The State *ex rel.*
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

1879
Special Term.

The State ex rel.
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

any person to any lawful process or order of the court." It is very questionable. whether the courts have not a right to punish summarily for some. other sorts of contempts than those specified in this act, though it does say that summary punishment shall only be inflicted in the cases specified. A similar statute exists in Arkansas, yet the Court of Appeals in that state held that they had a right to punish summarily, as for a contempt, the publication of a libel made while the court was sitting, charging that the court had been bribed to render a certain decision, though such a contempt was not among those enumerated in the statute as the only ones to be punished summarily. This decision was based on the ground, that to punish for contempts summarily was *inherent in all courts of justice;* that these rights were founded on principles co-eval and necessarily co-existent with the administration of justice in every country; and while the Legislature may regulate the exercise of this power, yet they cannot abridge either the express powers granted to the courts by the constitution, nor those necessarily implied when judicial power was conferred on the courts by the constitution. The *State* v. *Morrill*, 16 Ark. 390. The questions so well discussed in this case are questions, which may become very important; but they do not arise here, as the statute I have referred to authorizes this court to punish summarily by attachment in such a case as the one now before this court; nor is there any legislative limitations as to the punishment, which the court may summarily inflict in such a case as the present, though the statute does in some sorts of contempts of courts impose limitations on the extent of the punishment they may summarily inflict. See also *Ex parte Adams*, 25 Miss. 885, and *Ex parte Hickey*, 4 Smed. & M. 751.

The next enquiry is: Have the defendants been guilty of any contempt of this court, or, to use the words of our statute, have they "disobeyed any lawful process of this court?" The first question is: Was the *superse-*

*deas* issued by the order of this court such a process as they had a right to order to be issued in such a case? Was it "lawful process?"

It is settled by the authorities, that, if this court had no jurisdiction to award this process, the parties cannot be punished for a contempt in disobeying it ; for in such a case the order of this court granting the *supersedeas* might be treated as a mere nullity. See *People* v. *O'Neil*, 37 Cal. 109 ; *Swinburn* v. *Smith, Judge, &c.*, 15 W. Va. 500. On the other hand, if this court had jurisdiction to award this *supersedeas*, it is immaterial, whether it was properly ordered, or whether it ought not to have been ordered upon the merits of the case. If this court had jurisdiction, the defendants are bound to obey its *supersedeas*, though the court may have erred in granting it. The court had jurisdiction, though the case made in the petition did not entitle the plaintiff to an appeal and *supersedeas*, if this court had under the law the power to decide whether the petition entitled the plaintiff to a *supersedeas* or not. See *People* v. *Sturtevant*, 9 N. Y. (5 Selden) 263 ; *Kaye* v. *Kean*, 18 B. Mon. 847 ; *The Erie Railway Co.*, v. *Ramsey*, 45 N. Y. 644 ; *Sullivan* v, *Judah*, 4 Paige 444. The jurisdiction of this court to award an appeal and *supersedeas* to this order of the circuit judge made in vacation seems to us to be very clear. The Session Acts of 1877, ch. 44, § 1, ¶ 4, p. 52, expressly confers on this court jurisdiction to grant appeals and *supersedeas* in any cases in chancery wherein there is an order of decree dissolving an injunction. This necessarily confers on this court the power, and imposes on it the duty, to determine whether this order of Judge Hoge, made in vacation, did, or did not, dissolve the injunction in this case at the end of twenty days, the bond required not having been given. And if this court was of the opinion that this order did so operate as a dissolution of this injunction, and that there was probable error in the granting of the order, it was not only in the power of this court, but it was its duty, to award the appeal and *supersedeas*.

*Margin notes:* 1879 Special Term. The State *ex rel.* James M. Mason v. The Harper's Ferry Bridge Company. Syllabus 5. Syllabus 6. Syllabus 9.

1879
Special Term.

The State *ex rel.*
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

Syllabus 10.

Syllabus 7.

When this cause is heard on its merits, this Court will hear and consider all arguments, which may be presented, to show that this order made by Judge Hoge in vacation did not, and could not, operate as a dissolution of the injunction. But in this proceeding against the defendants for disobeying this *supersedeas* of this Court it will not enquire, or consider, whether it erred in judgment in awarding this *supersedeas*. It had clearly the right to consider and act upon the question, whether this order did, or did not, amount to a dissolution of the injunction after twenty days, the injunction bond not being given within that time; and if it did, this Court clearly had jurisdiction to award this *supersedeas*, and the defendants were bound to obey it, though they may have thought it ought not to have been awarded by this Court. If they thought that this Court had misapprehended the effect of this order of Judge Hoge, they should have moved this Court to set aside the appeal and *supersedeas* as improvidently awarded. But so long as it remained in force, they were bound to obey it. We could not therefore even consider in these cases, as now presented to the Court, the argument of the defendant's counsel that the injunction was not dissolved by this order of Judge Hoge, made in vacation, but by the option of the plaintiff in failing to give the additional bond required within twenty days.

But as the *supersedeas* awarded by this Court was not to take effect till the *supersedeas*-bond was executed, a question arises, whether this bond was given at such a time as to render the process of *supersedeas* effective and valid. To make it valid, it is insisted it should have been executed before the final decree in the circuit court dismissing the bill was rendered; that this final decree in effect dissolved the injunction, and though the first dissolution of the injunction by the order of the court in vacation was superseded by the giving of the *supersedeas*-bond and the service of the process, yet this would have no effect on the dissolution of the injunction produced by the

final decree, and which was not superseded. But, while it is true that the final decree of the circuit court had not been superseded by any order of this Court, it had been suspended by an order of the circuit court for sixty days, to afford the plaintiff an opportunity to apply to this Court for an appeal from and *supersedeas* to this decree; and till the expiration of these sixty days the final decree of the circuit court was inoperative, and this Court having superseded the dissolution of the injunction by the order of the judge in vacation, and the *supersedeas*-bond having been given, it seems perfectly clear, that till the expiration of these sixty days after the final decree the injunction was in full force by reason of this Court having superseded the order dissolving it, and the defendants having within these sixty days proceeded to build their bridge were in contempt of this Court in disobeying the process of this Court, which was in full operation, when they disobeyed it.

Again by the final decree the plaintiff's bill only was dismissed; and the court omitted in it to dissolve the injunction. This omission was obviously not accidental, but designed, the circuit court obviously regarding that there was no injunction then in force, it having been dissolved by the order in vacation.

We conclude therefore that after the giving of the *supersedeas*-bond by the plaintiff and the service of the process on the defendants they were enjoined from proceeding to build this bridge, at least till after the expiration of the sixty days from the entry of the final decree, during which time it was suspended; and whether the order granting this *supersedeas* was issued improvidently, or not, while it was in force the defendants were bound to obey it. See *Davis* v. *The Mayor of New York*, 1 Duer 451.

The defendants, as a justification of their disobedience of the process of this Court, undertake to prove that the plaintiff had verbally agreed with them, that he would abandon this appeal and *supersedeas*. This is proven by

1879
Special Term.

The State *ex rel·*
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

Syllabus 11.

1879
Special Term

The State ex rel.
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

the affidavit of William H. Travers and George W. Green; but it is not proven by the affidavit of Charles J. Faulkner; on the contrary it would appear from his letter, that he did not understand that any such express understanding existed; for in his letter he states, that the abandonment of the *supersedeas* by the plaintiff, Mason, is a legal conclusion to be drawn from the fact, that he, Mason, urged the final hearing of the cause; and yet his affidavit shows such active participation by Mr. Faulkner in whatever arrangements were made, that it is difficult to suppose he could have been ignorant of an express agreement made by the plaintiff, Mason, to abandon his appeal and *supersedeas*. Mason in his affidavit positively denies, that he ever did agree to abandon his appeal and *supersedeas*. It is however in these proceedings for contempt of the process of this Court unnecessary to consider this question, or to determine the question of fact in controversy, because whether true or false it is immaterial in these proceedings. For if the plaintiff, Mason, had expressly or impliedly agreed to abandon his appeal and *supersedeas*, the defendants should have applied to this Court to dismiss the appeal and *supersedeas*, especially when they knew that the plaintiff, Mason, denied that he had ever made any such agreement. They ought not for such a reason to have disobeyed the process of this Court, while it remained in full force. See *People* v. *Berger*, 53 N. Y. 405. If the *supersedeas* awarded by this Court had been made effective by the plaintiff giving the required bond, before the circuit court heard and determined the case on its merits, perhaps the plaintiff by assenting that the circuit court might proceed with the cause, after this Court had suspended its right to proceed, might have waived his right to prosecute his appeal and *supersedeas*. See *Fairfax* v. *Moses's ex'r.*, 4 Munf. 129.

In this case the circuit court, when it proceeded to hear this cause on its merits, had jurisdiction of the causes; and the *supersedeas* awarded by this court had

1879
Special Term.

The State *ex rel*
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

not become effective then. The allegation of the defendants is not, that the plaintiff is estopped from prosecuting his appeal, because he assented, after it was perfected, to the circuit court's proceeding as though it had never been granted, but because he agreed by matter *in pais* not to perfect this *supersedeas* and afterwards did it in bad faith. If this be so, it furnishes ground for this court to dismiss the appeal and *supersedeas*, but it furnishes no excuse for the disobedience by the defendants to the process of this court, while it remains in full force.

The advice of counsel may be under some circumstances a palliation to some extent of the offence of Syllabus 4.
their clients in disobeying the legal process of a court but the extent, to which it is a palliation, must depend upon the character of the advice and the circumstances under which it was given. See *The People* v. *Compton et al.*, 1 Duer 513. In the present case the advice relied upon by the defendants as an excuse or palliation of their offence is contained in a letter of Charles J. Faulkner to the president of The Harper's Ferry Bridge Company, of which the following is a copy :

"MARTINSBURG, November 26, 1879.
"GEORGE GREEN, ESQ.,
    "*President Harper's Ferry Bridge Company* :
"DEAR SIR :—I received by to-night's mail a letter from secretary Myers, enclosing a mandate of the Supreme Court of Appeals of West Virginia, with a note of its service upon you ; also a letter from my distinguished associate, Hon. William H. Travers, who by his ability and fidelity has already rendered you so much important service in your case. I do not give to Mr. Mason's late proceedings the serious aspect which my friend, Mr. Travers, does ; I look upon them as rather a subject of laughter than a ground for serious apprehension. There is nothing at present, according to my judgment, which can restrain you from proceeding with the construction of your bridge. There is no injunction now pending in any court which forbids the work to

1879
Special Term.

The State *ex rel.*
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

proceed. I do not see how your continuing prosecution of the work can subject you to the charge of being in contempt to any court. Your action would not be in contempt of the county court, for it has no longer any jurisdiction or control over the subject. It cannot be in contempt of the circuit court, for that court has already adjudicated a dissolution of his injunction, a dismission of his bill, and has declared that he never had at any moment a right to arrest your work. It cannot be in contempt of the Court of Appeals, for that court has never issued any order restraining the prosecution of your work; all that it has done has been to supersede an order made by Judge Hoge in vacation enlarging the injunction-bond, and dissolving it if he failed to give such additional bond. He could have given that bond at any time before the final dismission of his bill; but he refused to do so, pressing the case for a final hearing upon the bill, answers, exhibits and depositions; thus virtually abandoning his appeal, and waiving all benefit that he might have derived from it. I cannot see how the execution of this bond after the final hearing of the case and the dismission of his bill can possibly reinstate his injunction. I can therefore give you no other advice upon the subject but to go on with your work, and if he shall adopt any further proceedings in the case we shall meet it with energy and firmness, and I think fully vindicate your action against all his attempts to annoy you and to frustrate the construction of your bridge.

"Very truly yours,

"CHARLES J. FAULKNER.

"P. S.—It will save me a little trouble, as I am now in the midst of our court, if you will show this letter to my associates, Messrs. Davies and Travers, and if they do not concur in my views, I will cheerfully reconsider them and take such other course as may be deemed advisable.

"FAULKNER."

Mr. Faulkner had been employed as counsel in this

case only about one week before this letter was written; 1879 Special Term.

The State *ex rel.* James M. Mason v. The Harper's Ferry Bridge Company. in his affidavit he says, a day or two before the entry of the final decree, which was November 21, 1879. It was written hastily the same night that he was informed that the *supersedeas* of this Court had been served on the defendants. It was written during a term of the court in Berkeley, and while he was engaged in the business of that court, as he expresses it in his postscript, "in the midst of their court." He of course had no opportunity, while answering the letter he had received, or while preparing to answer this letter, to examine the record, which was in Jefferson county. I infer that he had never seen the order of Judge Hoge made in vacation on September 2, 1879, and to which this Court had granted a *supersedeas*, which he advises his clients they might safely disregard, nor had he ever been correctly informed, what was the true character of this vacation-order; for in his letter Mr. Faulkner thus speaks of this vacation-order: ."All that the Court of Appeals have done has been to supersede an order made by Judge Hoge in vacation enlarging the injunction-bond and dissolving it, if he failed to give such additional bond. He could have given such additional bond at any time before the final dismission of his bill, but he refused to do so, &c., thus virtually abandoning his appeal and waiving all benefit he might have derived from it." Mr. Faulkner, when he wrote this letter, had evidently not been informed, that by the very terms of this order Mason was given but twenty days from its date in which to give this additional bond, and that he was not permitted to give this bond after the 22d day of September. On the contrary, Mr. Faulkner evidently supposed he was by the terms of the order permitted to give the bond at any time before the final hearing of the case on November 21, 1879, and that Mason's urging the trial of the case then, and still refusing to give this bond, in Mr. Faulkner's opinion, amounted to an abandonment of his appeal. Mr. Faulkner thus, it seems, based his opinion, that this appeal and *supersedeas* had been

1879
Special Term.

The State ex rel.
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

abandoned, in part upon a misapprehension of the character of this vacation-order, believing, as he did, that it permitted Mason at any time pending the case to give this additional bond and make the injunction effective.

I also infer from this letter, that Mr. Faulkner, when he wrote it, had not been informed, that the final decree rendered on November 21, 1879, was not then in force, but had been suspended by an order of Judge Hoge; and this inference is admitted to be right, as Mr. Faulkner in his affidavit says, until the 12th day of December, 1879, he had not heard that this final decree of Judge Hoge had been suspended and was not in force. Mr. Faulkner's letter on its face shows, that he based the advice he gave his clients principally on the fact, that this final decree of the circuit court was in force. The rendition of this final decree, on which he so much relies to justify his advice, would of course have been regarded by him as entirely immaterial, if he had been at that time informed, that this decree had been suspended for sixty days. It would seem too, that Mr. Faulkner was misinformed of the grounds on which Mr. Mason threatened to hold the defendants responsible for contempt of court, if they proceeded with the building of this bridge. His letter would seem to have been written on the supposition, that after the final decree of the circuit court, which Mr. Faulkner did not know had been suspended, Mr. Mason had executed the additional bond of $2,500.00 required by the vacation-order of Judge Hoge, and that, because of his having so done, he claimed that the injunction was in force and could not be violated without the parties being in contempt of court.

Mr. Faulkner no where in his letter refers to any other bond than this additional bond, and referring apparently to it he says in his letter: " I cannot see how the execution of this bond after the final hearing of the case and dismission of his bill can possibly reinstate his injunction." If Mr. Faulkner here refers to this additional bond, as he seems to do, it being the only bond he

1879
Special Term.

The State *ex rel.*
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

had before spoken of, it would be apparent that he was laboring under a great mistake as to the grounds, on which Mr. Mason threatened to hold the defendants responsible for contempt of court, if they proceeded with the building of the bridge. It would indeed, as Mr. Faulkner seems to have considered, been absurd and a fit matter for laughter, had Mr. Mason supposed that the execution of this additional injunction-bond, after the case was finally decided and the bill dismissed, could have revived the injunction. It is possible however, that Mr. Faulkner was not misinformed as to this point, though he obviously was as to the other to which we have referred. He may possibly have intended by this bond executed after the final hearing of the case to refer to the *supersedeas*-bond in the penalty of $800.00, which this court had required. For though he had not mentioned in his letter this bond, yet he must have known that it had been executed, as in his letter he mentions the fact that the *supersedeas* had been served on the defendants, which it could not have been till after the execution of this *supersedeas*-bond.

The defendants therefore knew that this letter was written by counsel, who was unfamiliar with the case, and who had been employed in it by them only about a week before ; that it was written during the session of the Berkeley county court, while this counsel's mind as well as time was devoted to other business; that it was written hastily and without access to the record so as to afford him an opportunity to ascertain the real facts of the case; and they ought to have known that very important facts were misunderstood by Mr. Faulkner, and that an important fact, the suspension of the final decree for sixty days, he did not know. It was obviously therefore their duty not to have acted on the advice given in this letter, till Mr. Faulkner was correctly informed as to all the facts of the case, and had the time to give a careful examination of the law which should govern such a case, after all the facts were made known to him.

1879
Special Term.

The State *ex rel.*
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

They had been advised by Mr. Travers, their original counsel, who was well acquainted with all the facts of the case up to the final hearing, that they would incur serious responsibility in proceeding with the building of their bridge. As prudent men having proper respect for the law and for the orders of this court, they ought not under these circumstances to have acted on this advice. This advice however accorded with their wishes and supposed interest, and they assumed the grave responsibility of proceeding with the building of their bridge, relying, we suppose, on the promise of Mr. Faulkner, that if proceeded against therefor, he would meet the proceeding "with energy and firmness, and he thought fully vindicate their action."

In their answer to the rules in these cases the defendants rely upon the advice of counsel as an excuse or palliation of the offence with which they were charged, stating it only in a general manner, and two of the defendants, Martha Walsh and G. W. Green, and G. L. Myers the secretary of The Harper's Ferry Bridge Company, the third defendant, in a joint affidavit made by them, say in general terms, "that they were advised by their counsel, Hon. C. J. Faulkner, Hon. William H. Travers and Charles Davies, to disregard a paper served on them by James M. Mason, and to proceed with the construction of their bridge; and that it was on account of this advice that they did so." Such a general statement is entitled to very little weight or consideration. When parties accused of a contempt of court rely on the advice of counsel as an excuse or palliation of the offence, which which they are charged, they should state in detail the precise advice given them, and all the circumstances surrounding the giving of the advice, in order that the court may from the character of the advice, and the circumstances under which it was given, determine whether it is any palliation of the offence, and if a palliation, to what extent. To permit a general statement, that their counsel gave such advice, to be an excuse or palliation of

1879
Special Term.

The State ex rel.
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

such an offence would furnish to parties disobeying the legal process of the court a very facile mode of escaping all punishment. See *People* v. *Compton et al.*, 1 Duer 513. Neither Mr. Travers nor Mr. Davies in their affidavits state, that they gave any such advice. And it would hardly be just to them, and especially to Mr. Travers, to infer that they, and especially Mr. Travers, had been called on by the defendants to examine carefully the case and to give their or his opinion, whether the defendants could safely proceed with the building of this bridge. If the advice was given in such a manner, it would be a palliation of the offence ; but we do not think it at all probable, that it was so given. Mr. Davies or Mr. Travers may have said casually to some of the defendants something, which may have induced them to go on with the work, predisposed as they were to do so. But that a grave opinion was given, especially by Mr. Travers, after being called upon to give the question a careful examination seems highly improbable. We see from Mr. Faulkner's letter, that he had told the defendants, that it would be assuming a grave responsibility for them to go on with this work. Mr. Travers in his affidavit states, "that he knew nothing of the suspending order of Judge Hoge of the 24th of November, 1879, till the 8th of December, 1879." It would seem to be very unjust to Mr. Travers to infer, that he had been called upon to give an opinion after careful examination in a case which he knew involved serious responsibility, and that this opinion had been given upon so careless an examination, that he had failed to ascertain that Judge Hoge had entered of record an order suspending the operation of his final decree for sixty days.

The suspension of this decree is obviously a most important fact in determining the question, on which we are to infer Mr. Travers's opinion was asked. He had every reason to suppose that Mr. Mason would ask for such a suspension; and he knew he was entitled to obtain such suspension-order, if he asked for it. He could

1879
Special Term.

The State *ex rel.*
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

have ascertained in one minute, whether this final decree was suspended, by simply going to the clerk's office and examining the record.   And it would not be just to him for us to infer that he had ever been called upon to examine carefully the facts and give his opinion; for in so doing we would without evidence be charging him with gross and inexcusable negligence.   Unless he was thus called upon by the defendants to carefully examine the subject, they could not rely upon any loose words he may have spoken to them as palliating their offence to any considerable extent.

Their conduct ought not perhaps under all the circumstances to be regarded as a wilful and deliberate disobedience of the process of this Court; but it must still be regarded as an inconsiderate and reckless disobedience of the process of this Court, done with full knowledge that they would be held to responsibility for their conduct. They deliberately ran the risk of disobeying the process of this Court without any careful or proper examination of the question, whether they would be justified in what they were about to do ; and in so doing they were guilty of an inexcusable contempt of this Court.

The right of this Court to punish for such an offence is inherent and essential for its protection and existence. The discretion involved in this power is in a great measure arbitrary and undefinable ; and yet the experience of ages has demonstrated, that this arbitrary discretion in courts is perfectly compatible with civil liberty and auxilliary to the ends of justice.   See *Yates* v. *Lansing*, 9 Johns. 416, 417.   Accordingly our statute has not attempted to limit this arbitrary discretion of the courts, when the contempt is a disobedience of its lawful orders or process, as in this case. ·

Sometimes the courts order the improper act, which has been done in disobedience of its lawful process or orders, to be undone by the defendants, as that a deed thus improperly executed should be cancelled.   See *Vose* v. *Reed et al., trustees,* 1 Wood 653 ; or, where an execu-

1879
Special Term.

The State *ex rel.*
James M. Mason
v.
The Harper's
Ferry Bridge
Company.

tion has been thus improperly levied in disobedience of an order of the court, that the defendants should restore the property thus illegally levied upon. See *Smith* v. *Caldwell*, Sneed 341. This is generally done, when justice to some other party can only be effected by undoing the act illegally done. When this is not the case, the courts for such contempts generally inflict a fine or imprisonment, or both, on the defendants according to the circumstances of each case. If the court sees that the disobedience of the process of the court is a high-handed and wilful contempt of its authority, it inflicts not only a fine, but also imprisonment on the defendants. If, however, the court sees that the offence was committed, not wilfully and deliberately, but inconsiderately and without due respect to the law and the court, it inflicts usually a fine only on the defendants, the amount of the fine being fixed with reference to all the circumstances of the case.

In the case before us no injury will be done to any person by this court declining to require the defendants to pull down so much of the bridge as has been built by them in disobedience of the process of this court; and it therefore will not order this to be done. Nor will we order the imprisonment of any of the defendants, as taking a liberal view of all the facts and circumstances we have not concluded that the defendants, with full knowledge that they were about to violate the order of this court, wilfully disobeyed its process. We will confine ourselves to the infliction of a fine on each of the defendants for what we hold to be an inconsiderate and reckless disobedience of legal process issued by this court. The amount of this fine, which under all the circumstances we have agreed upon as proper, is $50.00 on each defendant. We are also of the opinion, that, as this disobedience of this *supersedeas* was calculated to impair and prejudice the remedies of said James M. Mason in his said appeal and *supersedeas*, he had a right to originate these proceedings against the defendants; and that

the costs, which have been incurred by him or which must be paid by him, and which amount to $46.10, should also be paid to him by the defendants, Murtha Walsh and George W. Green. Following the precedent in *Lane* v. *Lane,* 4 H. & M. 437, the fines and costs to be paid by said Walsh and Green should, if not paid in ten days, be enforce by their imprisonment, and the fine against The Harper's Ferry Bridge Company should be enforced by execution.

It must therefore be ordered, that the said Murtha Walsh and George W. Green and the said The Harper's Ferry Bridge Company for their misconduct and contempt of this Court be each fined for the use of the State of West Virginia $50.00, that execution for its fine should be awarded against The Harper's Ferry Bridge Company, and further that said Green and Walsh do each pay the one-half of $46.10, the costs incurred by J. M. Mason in these proceedings, or by the State of West Virginia which he must pay, and that said fines and costs imposed on them shall be paid to the sheriff of Jefferson county within ten days from the time the judgment in this case is entered, and in default thereof the said sheriff of Jefferson county must be commanded in the name of the State of West Virginia to arrest either of said parties, who may be in default, and commit him to the jail of Jefferson county, until the said amount due from him is paid, or until this Court shall order his discharge; and when the sheriff has collected said sums, he shall pay said costs to James M. Mason, and the said fines he shall pay into the treasury of the State of West Virginia; and he shall report his proceedings herein to to this Court on the first day of the next term.

JUDGES HAYMOND AND JOHNSON CONCURRED.