## THOMAS S. PAGE v. WELCOME FOWLER et als.

28   605
147  478

WHAT IS ADVERSE' POSSESSION OF PUBLIC LANDS.—To constitute adverse possession of public land, it is sufficient if the party in possession and claiming that his possession is adverse as against a prior possessor, claims the right to the possession as against all the world except the United States. It is not necessary that he possess under color of title.

PROOF OF ATTEMPT TO PRE-EMPT TO SHOW ADVERSE POSSESSION.—Where one enters upon public lands in the prior possession of another, and the prior possessor brings an action against him to replevy hay cut by him on the land, he has a right to prove that he has filed his declaratory statement of intention to pre-empt, and possesses the necessary qualifications of a pre-emptor, to show his adverse possession.

REPLEVIN BY A PRIOR POSSESSOR FOR HAY CUT ON PUBLIC LAND.— Replevin for hay cut on public lands cannot be maintained by a prior possessor against one who was in adverse possession, claiming a pre-emption right when he cut the hay.

PERSONAL ACTION FOR CROPS CUT ON THE SUSCOL RANCH.—A purchaser from Vallejo of a portion of the Suscol Ranch, who entered into possession, cannot maintain a personal action for crops cut on the land by one who under a claim of a pre-emption right entered on his possession in 1862.

PERSONAL ACTION TO TRY RIGHT TO POSSESSION OF PUBLIC LAND.—A personal action cannot be made the means of litigating and determining the right to the possession of real property as between conflicting claimants to the possession where the title is in the United States.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The defendants appealed from the judgment.

The other facts are stated in the opinion of the Court.

*Stanley & Hays*, and *M. A. Wheaton*, for Appellants.

The defendants remaining in quiet and undisturbed possession of the land from October, 1862, (at which time the crops had not commenced to grow,) during all the time the crops were growing until they harvested them, and even at the time this action was tried, constitutes a good and sufficient defense to this action. Admitting the plaintiff proved prior possession, which would have been sufficient evidence of title to have enabled him to maintain ejectment against a mere naked trespasser, he could not upon such evidence recover the crops raised *in specie* while the defendants held adverse possession of the land, for the reason that it would change a local into a transitory action. (*Mathers* v. *Ministers Trinity Church*, 3 Sergt. & R. 516; *Baker* v. *Howell*, 6 Ib. 482; *DeMott* v. *Hagerman*, 8 Cow. 220; *Halleck* v. *Mixer*, 16 Cal. 579; *Harlan* v. *Harlan*, 15 Penn. 513.)

"Title cannot be decided in an action merely personal and transitory, no matter whether replevin, trover, or assumpsit. Nor can there be maintained by one not in the actual exclusive possession, whatever his title may be, against one who is in the possession, claiming right." (*Brown* v. *Caldwell*, 10 Sergt. & R. 118.)

*Patterson, Wallace & Stow*, for Respondent.

The condition of the plaintiff's title to the premises on which the hay grew is similar to that of the plaintiff in *Page* v. *Hobbs*, 27 Cal. 483, except that in the case at bar plaintiff had taken the necessary steps as a purchaser from Vallejo, under Act of March 3d, 1863, "to grant the right of pre-emption to certain purchasers on the Suscol Rancho, in the State of California." This fact, in connection with the proof of possession of the plaintiff, upon which defendants had entered "through the opening in the fence," showed the

defendants to be mere *tort-feazors*, and none of the evidence offered by them tended to relieve them of this character.

Their pretended pre-emption proceedings in the United States Land Office were of no validity; they had no adverse possession in good faith, accompanied with claim of title, and therefore the hay they cut on the plaintiff's land might be recovered in this action. (*Halleck* v. *Mixer*, 16 Cal. 579; *McCracken* v. *City of San Francisco*, 16 Cal. 636; *Green* v. *Lighter*, 8 Cranch. 250; *Hunt* v. *Wickliffe*, 2 Peters, 211; *Potts* v. *Gilbert*, 3 Wash. Cir. Court Rep. 478; *Clark* v. *Courtney*, 5 Peters, 353; *Jackson* v. *Schoonmaker*, 2 John. 234.)


By the Court, RHODES, J.

Replevin to recover the possession of a lot of hay, or the value thereof, described as six hundred tons, more or less, of great value, to wit, of the value of six thousand dollars. The hay replevied and delivered to the plaintiff amounted to one hundred and twenty-four tons, of the value of twelve hundred and fifty dollars, and the plaintiff had verdict and judgment for that amount.

The hay was produced during the year 1863, upon a tract of land forming a part of a larger tract, known as the Suscol Rancho, in Solano County. The plaintiff was in possession of the tract, containing about two thousand acres, inclosed with a substantial fence, from some time in 1860 to August or September, 1862, when the defendants entered upon the land, the fence being down in places, so as to leave gaps from two to three hundred feet in length, and they have since resided on and had possession of the land, each of them claiming the right to enter upon and hold a quarter section of land, under the pre-emption laws of the United States. The defendants claim the right of entry and of pre-emption under the general pre-emption laws of the United States and under the Act of Congress of May 30th, 1862. (12 U. S. Statutes at Large, 410, Sec. 7.)

The plaintiff claims, by virtue of his prior possession, and

under the Act of Congress of March 3d, 1863, granting the right of pre-emption to certain purchasers in the Suscol Rancho. It was admitted that the lands were part of the Suscol Rancho, the title to which had been rejected by the Supreme Court of the United States; that the rancho was public lands of the United States; that the plaintiff had à conveyance of about two thousand acres of land, including the lands upon which the hay was produced, made to him in 1851 by M. G. Vallejo, under which the plaintiff entered; that the plaintiff had taken the necessary steps under the Act of Congress of March 3d, 1863, to present his claim to the Register and Receiver of the proper Land Office, to pre-empt the said two thousand acres, which claim was still pending, it being resisted by the defendants, who claimed the right of pre-emption, under the general laws of the United States.

The defendants offered to prove that each of them possessed the qualifications requisite to entitle him to pre-empt public lands in California, and had filed his declaratory statement of intention, to pre-empt the quarter section upon which he entered and had resided since October, 1862, and that they had procured their several tracts to be surveyed by the United States Surveyor-General; and the evidence was rejected by the Court. It was admitted that the claims of the defendants were then pending before the United States Register and Receiver. This decision of the Court is assigned as error, and it is claimed by the defendants that the evidence was admissible for two purposes: First—to show that their entry was lawful, and that they had the right to the possession of the land until they failed to comply with the provisions of the pre-emption laws; and, therefore, the crops raised on the land during the time they so held the possession were their property. And, second—To prove that they held adversely to the plaintiff, in good faith, under claim and color of title—and for that reason the plaintiff would not be entitled to recover the specific crops raised on the land during such adverse possession.

The evidence introduced or offered in the case fails to show any legal right or title to the land in controversy derived from

the United States, in either the plaintiff or the defendants. The Act of 1863 grants to the bona fide purchasers from Vallejo the right to purchase from the United States the lands they have reduced to possession, but the plaintiff has not yet effected the purchase from the United States. The defendants' claim of pre-emption, either under the general pre-emption law, or the Act of May 30th, 1862, has not ripened into a title. It was held by this Court, in *Hastings* v. *McGoogin*, 27 Cal. 84, and *Page* v. *Hobbs*, 27 Cal. 483, that those portions of the Suscol Rancho which had been reduced to possession by the " bona fide purchasers from said Vallejo or his assigns" were withdrawn from the operation of the general pre-emption laws by the Act of March 3d, 1863, which gave to such purchasers the right of pre-emption, upon certain terms and conditions in the Act specified. And there can be no doubt that Congress had the power to thus withdraw the lands from pre-emption and sale under the general laws, at any time prior to the acquisition, by a settler, of a right in the lands that he could maintain against the United States, so as to secure ultimately the legal title.

At the time of the entry of the defendants, however, neither they nor the plaintiff held the legal title, but both parties claimed such right and interest in and to the lands as under the laws of the United States accrues to the person who has taken the first steps to secure a pre-emption claim to the land, but which has not been approved by the proper officer ; that is to say, such would have appeared to be the state of the title and claim on the part of the defendants also, had the evidence offered by them been admitted. It is unnecessary therefore for the purposes of this case to determine whether the defendants had acquired such a right to the land under the Act of 1862 and the general pre-emption laws of Congress as would preclude Congress from withdrawing the land from the operation of the pre-emption laws, or whether the Act of 1863, granting the right of pre-emption to purchasers in the Suscol Rancho, did in effect divest whatever incipient right or interest the defendants may have acquired. The title being, by

77

the admission of the parties, in the United States, neither party, as has been repeatedly held by this Court, can rely upon it for a recovery, nor can they set it up as a defense, in a contest for the possession, or in respect to rights of property growing out of the fact of possession. Conceding to the plaintiff the benefit of his prior possession, and regarding him as engaged in perfecting his claim to the pre-emption, the evidence offered by the defendants to prove that they were taking the necessary steps to establish their claims to the pre-emptions was clearly admissible and competent, in connection with proof of their entry in October, 1862, and actual possession of the premises up to the time when the hay was cut in 1863, to show that during that period they were in adverse possession of the premises.

Both parties refer to *Halleck* v. *Mixer*, 16 Cal. 579, as authority upon the second branch of the question, defining the character of the adverse possession that the defendants must have in order to prevent a recovery of the specific crops raised on the land. Mr. Chief Justice Field, in delivering the opinion of the Court said: "The true rule is this: "The plaintiff out of possession cannot sue for property severed from the freehold when the defendant is in possession of the premises from which the property was severed—holding them adversely, in good faith, under claim and color of title. In other words: The personal action cannot be made the means of litigating and determining the title to the real property, as between conflicting claimants." The Court referred to *Harlan* v. *Harlan*, 15 Penn. 513, as containing a correct exposition of the doctrine. In that case the Court commented on and affirmed the principle of *Mather* v. *Trinity Church*, 3 Serg. and Rawle, 509, in which the Court held that "trover for stone and gravel from land does not lie by one who has the right of possession against the person who has the actual adverse possession of the land and sets up title to it. It will be remarked that it is not the actual possession, but it is the actual adverse possession of a person who claims title to it, that is the criterion.   *   *   *   What is alone material is that

he (the plaintiff) had the title and the right to the possession, and there was no claim of title to the realty made by the defendants.  *  *  *  The mere assertion of a title would be nothing."

The defendants' possession in this case was adverse to the plaintiff, in every sense in which that term · is applicable between parties, neither of whom set up color or claim of title, but where each is diligently seeking to acquire the title of the United States to the same parcel of public lands, in the honest belief that under the laws of the United States he is entitled to the pre-emption, and will ultimately acquire the legal title.  The earlier doctrine of the common law, that the possession, to be deemed adverse, must be under color and claim of title, never had any just application to cases where the parties were contesting the right to the possession of parcels of the public lands of the United States, for no color or claim of title could be shown or asserted that was not palpably inconsistent with their admission of title in the United States.  To constitute adverse possession in such cases, it is sufficient if the defendant in possession claims the right to the possession against all the world except the United States.  Still we think that cases of that sort may be brought within and solved by the rule in *Halleck* v. *Mixer*, and the case from Pennsylvania.  The rule when stated as applicable to cases where the title is outstanding in the United States, is, that the personal action cannot be made the means of litigating and determining the right to the possession of real property, as between conflicting claimants.  The mere trespasser who casually or temporarily enters, for the purpose of severing or removing property attached to and forming a part of the realty, cannot invoke the rule, for he does not hold the adverse possession.  The case of a defendant who has entered upon the public land then in the plaintiff's possession, claiming in good faith the right to pre-empt the same, and who is proceeding according to the forms of law to perfect and enforce his right of pre-emption, is clearly within the reason of the rule laid down in *Halleck* v. *Mixer*; for, although he does not

claim title, he claims all the right that can be held in the land, consistent with the fact of title in the United States, and, as we have remarked, the title cannot be made use of by either party, for attack or defense. The rule is designed' to prevent parties claiming conflicting rights in land, from litigating them indirectly in a personal action, and such rights as persons may have, consistently with the acknowledgment that the ultimate title has not passed from the paramount source of title, has been uniformly regarded in this State as amounting to an interest in lands—to title—and as such it evidently falls within the rule. The evidence offered by the defendants was therefore admissible, to show that their possession was adverse to the plaintiff, and thus to bring them within the rule just mentioned.

Judgment reversed and the cause remanded.

Mr. Justice CURREY expressed no opinion.