S. G. BREDEN, Respondent, v. BERNT JOHNSON and William Kensinger.
BERNT JOHNSON, Appellant.

(219 N. W. 946.)

**Sales — growing hay is "goods" within Uniform Sales Act.**

1. Under the Uniform Sales Act the term "goods" includes industrial growing crops and things attached to or forming a part of the land which are agreed to be severed before the sale or under the contract of sale. (1925 Supplement to the Compiled Laws of 1913, § 6002a76.) A growing crop of hay is goods within this act.

**Sales — under contract for sale of growing hay, title passes immediately or when hay is ready for severance.**

    2. Where, under a contract for the sale of hay, no further act is to be done by the seller and no conditions are to be fulfilled, the title ordinarily will pass immediately or at the latest when the hay is mature enough for severance. (1925 Supplement to the Compiled Laws of 1913, § 6002a19.)

**Landlord and tenant — claim and deliver, tenant may be held for wrongful severance of hay.**

    3. Where hay which is fructus naturales is wrongfully severed by a tenant under a lease which gives him no right thereto, he may be held for the value of the hay in an action of claim and delivery.

**Landlord and tenant — rule restricting owner — not applicable between landlord and tenant.**

    4. The rule which restricts an owner to the recovery of the value of the use and occupation as against an adverse claimant or trespasser harvesting crops, is not applicable as between landlord and tenant, the latter being precluded from setting up a right adverse to the former; nor as between the landlord's vendee and the tenant.

Opinion filed June 15, 1928.

    Landlord and Tenant, 36 C. J. § 1950 p. 706 n. 47.  Sales, 35 Cyc. p. 44 n. 94; p. 302 n. 21.

    Appeal from the District Court of Richland County, *Wolfe,* J. Affirmed.

    *Purcell & Heder,* for appellant.

    "One who sows, cultivates and harvests a crop upon the land of another is entitled to the crop as against the owner of the land, whether he came to the possession of the land lawfully or not, provided he remains in possession till the crop is harvested." Roney v. Halvorsen, 29 N. D. 13, 149 N. W. 688; Golden Valley Land Co. v. Johnstone, 21 N. D. 97, 128 N. W. 690.

    "The owner of land held adversely is not the owner of the crops, and cannot recover them, or their value, from one who has received and converted them." Branch v. Morrison, 51 N. C. 16; Ray v. Gardner, 82 N. C. 454. Fauclon v. Johnston (N. C.) 9 S. E. 395.

    "Replevin will not lie because the personal action cannot be made the means of litigating and determining the title to real property as between conflicting claimants." 34 Cyc. 1365; Gunderson v. Holland, 22 N. D. 258, 133 N. W. 546; Golden Valley Land & Cattle Co. v. Johnstone, 21 N. D. 97, 128 N. W. 691.

*Forbes, Lounsbury & Forbes,* for respondent.

"Wild grasses growing upon wild, uncultivated land are in all cases a part of the realty. And if so, it would seem that they could not be transferred from the owner to some other person except by an instrument in writing." Powers v. Clarkson, 28 Pac. (Cal.) 218.

"A sale of wild grass growing upon the vendor's land cannot be made by parol. Such an agreement comes within the Statute of Frauds, and a written contract cannot be dispensed with." Kirkeby v. Erickson (Minn.) 96 N. W. 705.

"The person acting as agent of the vendor must not only contract for the sale of lands in writing, but his authority so to contract must also be in writing." Newlin v. Hoyt (Minn.) 98 N. W. 323.

"The word 'crop,' in its general signification, means the product of cultivated plants while growing, or that product after it has been harvested or severed from the stalk or root to which it was attached." State Mut. Ins. Co. v. Clevenger, 87 Pac. 583.

A tenant cannot deny the title of his landlord's assignee, nor of the grantee of the demised premises. 24 Cyc. 945 and cases cited.

"Adverse possession, generally speaking, is a possession of another's land, which, when accompanied by certain acts and circumstances, will vest title in the possessor." 2 C. J. 50.

There can be no adverse possession without actual possession, and the start of adverse possession must be such as will work a disseisin of the lawful owner. Coleman v. N. P. R. Co. 36 Minn. 525.

"It is a mistake to suppose that the title to real estate may not be incidentally tried in a transitory action." Morris, Replevin, p. 96.

The findings and conclusions of a trial court in a case tried without a jury when there is a substantial conflict in the evidence are conclusive and cannot be disturbed on appeal. James River Nat. Bank v. Webber, 19 N. D. 702, 124 N. W. 952; State Bank v. Maier, 34 N. D. 259, 158 N. W. 346.

BIRDZELL, J. This is an action of claim and delivery involving the hay crop grown upon a certain quarter section of land in 1926. By stipulation the case was tried to the court without a jury. The land was owned by C. E. Lowry of Cushing, Iowa, and it appears that in the spring of 1926, Lowry wrote to one Hanson, who lived near the

land, asking if he would want to farm the land again and inquiring if there was any chance to sell it. To this letter Hanson replied that the prospects for selling the land were very poor and he suggested that the field on the land was very low and if it dried out some flax might be sown late in May. On June 3d Hanson wrote again that he had a chance to rent the land to one who would plow that part which had been plowed before and give as rental one fifth of the crop. He further suggested that the contract could be fixed later, as the party was ready to start at once. Lowry assented to this arrangement but no other contract was made. Hanson rented the land to the defendant Johnson and authorized the latter to go ahead and plow the whole quarter section and put it into flax if he could get to it. A portion of the land was plowed and sown to flax. The defendant, in the course of preparing the land for plowing, had plowed some firebreaks and burned the old grass off of substantially the entire quarter section, which work so improved the condition of the unplowed land as to result in a better crop of hay being produced that season. In July the plaintiff, who had previously taken hay off this land, observing that only a portion of it had been put in crop, wrote to Lowry proposing to again take the hay crop and enclosed a check for $20 for the same, which Lowry accepted. During August Lowry's son, who conducted part of the correspondence regarding the land, came to North Dakota and in conversation with the defendant Johnson concerning the hay he learned of the latter's desire to take the hay crop. At that time the hay had not been cut. It is a fair inference from the record that the defendant was at that time aware of the plaintiff's claim. Lowry later attempted to induce the plaintiff to relinquish any right he had to the hay, sending him a check to refund the payment made, which the plaintiff declined to accept. Later the defendant cut the hay and the plaintiff stacked one stack and bunched a portion of the remainder. The defendant stacked the remainder and later removed all of the hay except one load which was obtained by the plaintiff. The trial court made findings of fact and conclusions of law in favor of the plaintiff, giving judgment for $146 and costs.

We are of the opinion that the correspondence shows an authority to Hanson to lease only that portion of the land which would be put into crop and that he was not given authority to lease any remaining hay land. This action was commenced on the 28th of September, 1926,

at which time the hay was all in stacks and bunches. The merits of the controversy, then, under the appellant's contentions, turn upon the question whether or not one who, without right, severs a crop of hay that is fructus naturales and puts it in stacks upon the land may be held answerable for the same in a claim and delivery action.

Under the terms of the contract between Hanson and Johnson, according to which the latter entered into possession and sowed the flax, Johnson did not become the owner of the hay which later grew upon the uncropped portion of the land. As against Lowry he was only rightfully in possession of such land as he sowed to crop and Lowry remained the owner in possession of the hay land. While Johnson may have construed the contract otherwise, he was not justified as a matter of law in so doing. While these relations existed Lowry, in effect, sold the growing hay to the plaintiff, which sale, by operation of law, was accompanied by an irrevocable license to enter upon the land for the purpose of severing it. Did the plaintiff acquire title when he purchased it? Under well established and elementary principles of law, the effect of such contract is to transfer title to the purchaser. 1 Williston, Sales, 2d ed. § 135. "Goods," according to the Uniform Sales Act, "includes all chattels personal other than things in action and money. The term includes emblements, industrial growing crops, and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale." (1925 Supplement to the Compiled Laws of 1913, § 6002a76.) The contract in question related to specific or ascertained "goods," and the title would pass according to the intention of the parties. Section 6002a18. As no further act was to be done by the seller and as no conditions were to be fulfilled, no intention to postpone the passing of title to a subsequent date appears. Hence, it would pass immediately or, at the latest, when the hay was mature enough for severance. Section 6002a19.

The appellant contends that title passed to him under the rule that where one in possession of land harvests a crop thereon the title passes to him regardless of whether his possession was lawful or not, citing 17 C. J. 381, and some adjudicated cases, the strongest of which, in support of this contention, are, perhaps, the following from California and New York: Page v. Fowler, 28 Cal. 605, id. 37 Cal. 100, id. 39 Cal. 412, 2 Am. Rep. 462; Johnston v. Fish, 105 Cal. 420, 45 Am. St.

Rep. 53, 38 Pac. 979; Stockwell v. Phelps, 34 N. Y. 363, 90 Am. Dec. 710. In our opinion the appellant was never in a position to avail himself of the rule contended for. As to Lowry he was not in adverse possession of any part of the premises. He was Lowry's tenant of that portion of the land which he seeded to flax. Being a tenant he was at all times precluded from asserting any claim as against Lowry except such as might be founded upon their contract. His possession was in no sense adverse. As the contract gave him no right to the hay and no right to possess the hay land, he, in law, must be considered as having no title to the hay and he could acquire none as against Lowry by its unlawful severance. Whatever possessory right he was required to exercise in order to sever the hay must at once be referred to the contract, and this could but result in the conclusion that the hay remained the property of Lowry. In turn, under Lowry's contract with the plaintiff, the title would be in the latter. Under the rule contended for and illustrated in the cases cited, the owner of the land is considered to have an adequate remedy in a recovery of the value of the use and occupation where one has occupied his premises adversely. This rule applies as between a true owner and a trespasser especially as to fructus industriales; Golden Valley Land & Cattle Co. v. Johnstone, 21 N. D. 101, 128 N. W. 691, Ann. Cas. 1913B, 631; Roney v. H. S. Halvorsen Co. 29 N. D. 13, 149 N. W. 688; but as to fructus naturales, see Nesbitt v. St. Paul Lumber Co. 21 Minn. 491; Lindsay v. Winona & St. P. R. Co. 29 Minn. 411, 43 Am. Rep. 228, 13 N. W. 191, or one claiming adversely to him; but where, as here, the one who invokes it is precluded from asserting that his possession is adverse, it can have no application. He gets only such right as his contract with the owner gives him. Similarly, the plaintiff derives his title to the hay from Lowry and, as the latter owns it as against the defendant, the plaintiff's title is first in point of time and superior.

There are other errors assigned, but, under our view of the law, they are not such as to have prevented a fair trial nor to have affected the result.

The judgment is affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, BURKE, and BURR, JJ., concur.