17 So.2d 413

**HYATT v. REYNOLDS.**

**8 Div. 277.**

Supreme Court of Alabama.

March 23, 1944.

W. C. Rayburn, of Guntersville, for appellee.

M. F. Lusk, of Guntersville, for appellant.

STAKELY, Justice.

This is a statutory action in detinue, brought by Doyal Hyatt (appellant) against Otis Reynolds (appellee) for the recovery of seed cotton, the produce of one and one-half acres of land. The case was tried before the court, without the intervention of a jury, and resulted in a judgment for the defendant. This appeal is from that judgment.

In June, 1941, Otis Reynolds owned a growing cotton crop of one and one-half acres, a mare and some farming tools. He also owned an automobile in need of repairs. He traded the crop, the mare and the tools to Douglas Carrell, who operated a service station and repair shop. In the language of Otis Reynolds: "I made a trade with Doug Carrell about fixing my car, told him I would give him my cotton patch and mare and plow tools if he would put the car in good shape—overhaul it from one end to the other. He told me to bring the mare and tools to his house and the car to his shop."

Otis Reynolds carried the car to the shop and three days later delivered the mare and the tools to Carrell's home and received the repaired car at the shop. About the same time Carrell sold the crop, the mare and tools to Doyal Hyatt, the plaintiff, for $50 in cash and a gold watch. Hyatt paid the cash and turned over the watch to Carrell and received the mare and the tools. When the cotton was ready to pick, Hyatt went to see Reynolds and, not finding him at home, employed the wife and children of Reynolds to pick the cotton. When Hyatt went back later, they had picked about 250 pounds of cotton and when Hyatt went back a second time they had picked not much more and when he went back again to get the cotton, the defendant refused to let him have possession of any of the cotton, saying that the repair job on his car did not hold up, that the car was not fixed. Reynolds never told Hyatt that he had not sold the cotton to Carrell or that Carrell had not sold it to Hyatt.

No papers were signed by either Reynolds when he traded with Carrell or by Carrell when he traded with Hyatt. Car-

rell testified that Reynolds never complained of the job. Reynolds testified, among other things, as follows:

"Carrell didn't fix my car. The cotton was in the field. I carried the car back to Doug I guess 25 times and he kept putting me off. I took the car when Carrell turned it back to me, and tried to use it; I got it home and got another fellow to work on it. I traded with Carrell along in June sometime. I carried the car back the last time or two and told him he would not get the cotton until he fixed the car. He said he would fix it for $35; the block needed reboring and the pistons—that was the last part of June."

Appellee suggests in brief that the Statute of Frauds applies to this case because the sale involved a crop of growing cotton. On the record, however, we do not think that the question is presented and, accordingly, it will not be considered in this opinion.

■ Appellant urges that the contract between Carrell and Reynolds was executed and that title not only to the mare and the tools but also to the cotton crop passed to Carrell, who was then able to invest Hyatt with the legal title and so support an action of detinue. Appellee, however, insists that the contract between Carrell and Reynolds was an executory contract to sell, claiming that under the contract the car was to be put in good shape before passing the title. As a general rule a contract is executory so long as something remains to be done, the performance of which is a condition precedent to a transfer of title to the property. South Carolina Cotton Growers' Co-op. Ass'n v. Weil, 220 Ala. 568, 573, 126 So. 637.

"But if anything remains to be done by either party as a condition precedent, the contract remains executory, and the title does not pass." Knight v. Reed & Jones Piano Mfg. Co., 16 Ala.App. 82, 75 So. 630, 631.

"It is analogous to the principle, so well recognized in the sales of personal property, when the delivery is conditional or made in the expectation of immediate payment. In such cases, no title passes until the condition is complied with." Austill v. Hieronymus Bros., 124 Ala. 376, 27 So. 255, 256.

■ If the contract remained executory, then Carrell received no title which would support an action in detinue. Minge

&. Co. v. Barrett Bros. Shipping Co., 10 Ala.App. 592, 596, 65 So. 671. But Reynolds delivered to Carrell, the repair man, the mare and the tools when he received the car back from Carrell. And appellant claims that actual delivery of the goods in this case is sufficient to show an intention to pass the title, especially when taken in connection with the conduct of Reynolds with reference to the effort of Hyatt to gather the crop. Shealy & Finn v. Edwards, 73 Ala. 175, 181, 49 Am.Rep. 43. But delivery does not necessarily show an intent to pass the title. Shines v. Steiner, 76 Ala. 458.

Under the Uniform Sales Act (§ 1 et seq., Title 57, Code of 1940) the passing of title between a seller and a buyer depends upon the intention of the parties. Under § 24, Title 57, Code of 1940, where, as in the case at bar, there is a contract to sell specific or ascertained goods, the property is transferred at such time as the parties to the contract intended it to be transferred. Under the statute, for the purpose of ascertaining the intention of the parties, "regard shall be had for the terms of the contract, the conduct of the parties, the usages of trade and the circumstances of the case." This is a statement of the rule as it also was at common law. 46 Am.Jur. § 413, p. 585.

Upon consideration of the matter, we think that under all the evidence the question of intention as to when the title to the property passed was a question of fact for the court, since the case was tried before the court, without the intervention of a jury. This is true as to the cotton crop, because an industrial growing crop, which includes a cotton crop, falls within the influence of the Uniform Sales Act.

" 'Goods' include all chattels personal other than things in action and money. The term includes emblements, *industrial growing crops,* and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale." § 1, Title 57, Code of 1940. (Emphasis supplied.)

See Breden v. Johnson, 56 N.D. 921, 219 N.W. 946; Cryar v. Ogle, 19 Ala.App. 493, 99 So. 157; Ex parte Cryar, 211 Ala. 13, 99 So. 158.

It is true that the mare and the tools were delivered and no demand for or inquiry about the mare or tools was ever made by Reynolds. These were circumstances to be considered in determining the intention of the parties, but do not in themselves settle the question. If Reynolds made no demand for the mare and the tools, he could take this loss, if he wished, without waiving his right to the cotton. Carrell cannot complain if he is allowed to keep the mare and the tools.

On the other hand, although Carrell swore that Reynolds never complained of the job, according to Reynolds, the contract was not to be complete until the car was put in good shape; the trade was made in June and he went back many times to complain of the condition of the car and Carrell kept putting him off until when, in the last of June, on one of his last trips, Reynolds advised Carrell that he could not have the cotton. We do not think, assuming these facts to be true, that the condition of the contract was waived by failure to make a timely demand for performance. Knight v. Reed & Sons Piano Mfg. Co., supra.

But where does Hyatt stand in the transaction? According to the contention of Reynolds, the contract remained executory and title to the cotton did not pass. Assuming that under the contract and the evidence, title did not pass to Carrell, then Hyatt has no greater right than Carrell. The Uniform Sales Act, § 29, Title 57, Code of 1940, provides as follows:

"(1) Subject to the provisions of this chapter, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner * * * is by his conduct precluded from denying the seller's authority to sell."

The foregoing section is but a statement of the elementary general rule that no one can transfer a better title than he has and with certain well-known exceptions, an innocent purchaser for value from one without title, acquires no title as against the true owner. Bennett & Co. v. Brooks, 146 Ala. 490, 41 So. 149; Barrow v. Brent, 202 Ala. 650, 81 So. 669.

We conclude that under the tendencies of the testimony taken in connection with the contract, Hyatt could have no better title than Carrell and, as stated, the question of intention as to when title would pass was a question of fact.

"Ordinarily, the question of intention as to the passing of title is one for the jury, unless the determination of the question involves the construction of written instruments, the legal effect of which is for the court, or the consideration of evidence, which is undisputed and upon which no conflicting inference can be drawn." 46 Am.Jur. 568.

See also 55 C.J. p. 531.

The judgment of the lower court is affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.