165 So.2d 392

Philip HAMM, as Commissioner,

v.

CONTINENTAL GIN COMPANY.

3 Div. 106.

Supreme Court of Alabama.

May 28, 1964.

Richmond M. Flowers, Atty. Gen., Willard W. Livingston and Herbert I. Burson, Jr., Asst. Attys. Gen., for appellant.

Calvin M. Whitesell, Whitesell, Alton & DeMent, Montgomery, for appellee.

GOODWYN, Justice.

Appeal by the Commissioner of the State Department of Revenue from a judgment of the circuit court of Montgomery County ordering repayment to Continental Gin Company (appellee-taxpayer) of sales taxes

assessed against Continental and paid by it under protest. See: Code 1940, Tit. 51, §§ 890, 891, as amended by Act No. 402, appvd. July 10, 1943, Gen.Acts 1943, p. 369.

Continental manufactures cotton gins at its plant in Prattville, Alabama. The plant was formerly located in Birmingham. The cotton gin machinery here involved was manufactured at these plants. Delivery of the machinery was made at these plants, during the period January 1, 1958, through September 30, 1960, to out-of-state buyers who used their own equipment for transporting the machinery to points outside Alabama where it was used.

The question presented is whether, under the particular facts and circumstances of this case, the trial court erred in holding that these were interstate sales and not subject to the sales tax.

In rendering its judgment, the court made the following findings:

"Title 51, Section 786(2) e, Code of Alabama, 1940, as last amended, defines coverage of the sales tax. It defines a sale and states 'every closed transaction constituting a sale.' This section deals with coverage and not exemption and hence should be construed strictly against the taxing power and with favor toward the tax payer. Therefore, the question resolves itself to the question of whether or not the sales were completed transactions in Alabama so as to be intrastate as opposed to interstate sales.

"The Court is of the opinion, from the testimony heard by the Court, that the sales were not intrastate sales but were interstate sales and therefore, not subject to the sales tax imposed, and the tax payer is entitled to the taxes claimed refunded to it in the manner provided by law under the Counts claiming under Section 890, Title 51. * * *"

Our conclusion is that the judgment is due to be affirmed.

The evidence discloses that the custom and practice in the industry is that gin machinery is not accepted by the buyer, nor is payment due, until it is installed and operating satisfactorily at the buyer's gin site. In this case all the gin sites are out of the state.

Each gin is specially designed for and fitted and installed by Continental at the out-of-state gin site. For instance, a "lint cleaner" is described in the evidence as a piece of machinery manufactured to order, containing some 2,500 pieces and requiring a specially trained engineer to install.

In every case of damage to the machinery prior to installation, Continental paid for such loss. Also, Continental insured the machinery until it was operating and accepted by the buyer. There seems to be no question that title to the machinery in each instance remained in Continental until the buyer's acceptance.

The State's contention is that each sale was a closed transaction in Alabama because delivery of the machinery was made to the buyer in this State for transportation out of the state in the buyer's own equipment, thereby subjecting the machinery to the sales tax under the provisions of Rule No. I 114–012 of the State Department of Revenue. From the State's evidence, it appears that this was the sole basis for assessing the tax. We do not understand the State to question that, except for said rule, the sales here involved would constitute non-taxable interstate sales.

Continental's position is that the sales tax statute (Act No. 100, § 1(1) (e), appvd. Aug. 18, 1959, Acts 1959, Vol. I, pp. 298, 299) levies the tax on closed transactions in this State, or intrastate sales; that the sales here involved were not closed transactions in this State, nor intrastate sales, but instead were interstate sales, and, accordingly, were not subject to the tax.

Rule No. I 114–012 provides as follows:

"114–012

"*Interstate Commerce, Sales in*

"Sales are in interstate commerce and cannot. be . taxed by the Alabama Sales Tax Law where:

"(1) The seller is required by the sales agreement to deliver the goods outside the state in his equipment, or

"(2) The seller is required by the sales agreement to deliver the goods to a common carrier or to the United States Post Office for transportation outside the state at the seller's direction either f. o. b. point of origin or f. o. b. point of destination, or

"(3) The seller is required by the sales agreement to deliver the goods outside the state by the use of an independent trucker hired by him.

"*Property is not sold in interstate commerce when the buyer takes actual possession of the goods in this state* or when an agent of the buyer accepts delivery for him to make delivery outside the state at the buyer's direction." [Emphasis supplied.]

This rule was formally promulgated in 1959, but there is evidence that the Department of Revenue has enforced the sales tax law since its original enactment in 1937 in accordance with the principles embodied in the rule.

Section 1(1) (e) of Act No. 100, supra, is as follows:

"Section 1. Definitions.—(1) The following words, terms and phrases, when used in this Act, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

\* \* \* \* \* \*

"(e) The term 'sale' or 'sales' includes installment and credit sales and the exchange of properties as well as the sale thereof for money, *every closed transaction constituting a sale.*" [Emphasis supplied.]

Section 1(1) (e) originated in Act No. 126, § 1(d), appvd. Feb. 23, 1937, Gen. and Local Acts Ex.Sess.1936–37, p. 125. Each subsequent amendment or reenactment of the sales tax law has included this same definition. See: Act No. 18, § 1(e), appvd. Feb. 8, 1939, Gen.Acts 1939, p. 16, Code 1940, Tit. 51, § 752(e); Act No. 584, § 1, Gen.Acts 1943, pp. 585, 586, Act No. 305, § 1, appvd. Aug. 13, 1947, Gen.Acts 1947, pp. 160, 161; Act No. 282, § 1, effective Aug. 24, 1955, Acts 1955, Vol. 1, pp. 645, 646; Act No. 100, § 1(1) (e), appvd. Aug. 18, 1959, Acts 1959, Vol. 1, pp. 298, 299.

As we see it, the decisive question presented is whether the administrative construction of the sales tax law, as embodied in Rule I 114–012, has had the effect of including within the meaning of the term "closed transaction," as that term is used in § 1(1) (e) of Act No. 100 and in preceding sales tax laws, supra, transactions such as those here involved, where the only intrastate incidents consist of delivery of property in this State to out-of-state buyers for transportation out of the State in their own equipment.

The State, in insisting that the administrative construction has had such effect, relies on the statement appearing in the last paragraph of the opinion in State v. Southern Electric Generating Co., 274 Ala. 668, 671, 151 So.2d 216, to the effect that the State is "bound by the administrative construction of twenty-five years." This expression was considered in the recent case of International Union of Operating Engineers, Local Union No. 321 (AFL–CIO) v. The Water Works Board of the City of Birmingham, Ala.Sup., 163 So.2d 619, where it was said, viz:

"\* \* \* such administrative rulings having been in force and effect for many years, are highly persuasive authority of the correctness of the rule. State v. Southern Electric Generating Co., 274 Ala. 668, 151 So.2d 216; Haden v. McCarthy, 275 Ala. 76, 152 So. 2d 141. Such administrative construction is neither binding on the State nor its agencies nor on the court. Therefore, the use of the word 'bound'

in the last paragraph of the opinion in State v. Southern Electric Generating Co., supra, was not intended to impinge upon the longstanding rule hereinabove adverted to. A clearer statement of what was there intended is that where an administrative construction by proper officials is fair and reasonable and has been followed for the prescriptive period of twenty years or longer, the courts are not disposed to alter that construction merely because the highest officials may have changed their minds about the matter under consideration."

■ Clearly, it seems to us, the delivery of the property in this State, in and of itself alone, did not constitute a "closed transaction" in this State within the meaning of the quoted term as used in § 1(1) (e) of Act No. 100 and preceding sales tax statutes, supra.

Code 1940, Tit. 57, § 7(1) (2), provides as follows:

"(1) A contract to sell goods is a contract whereby the seller agrees to transfer the property in goods to the buyer for a consideration called the price.

"(2) A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price."

■ A "contract to sell" is one where the seller merely agrees to transfer title to the buyer, whereas in the case of a "sale" the seller presently transfers title.

■ The intention of the parties determines when a contract to sell is executed (Code 1940, Tit. 57, § 24, infra), and such intention is a question of fact rather than one of law. American Automobile Ins. Co. v. English, 266 Ala. 80, 85, 94 So.2d 397, 400.

In McPhillips Mfg. Co. v. Curry, 241 Ala. 366, 371, 2 So.2d 600, it was held that certain sales were not "closed transactions,"

within the meaning of the sales tax definition of a sale, because title had not passed.

■ While actual delivery is of great importance in determining whether there was an intention to pass title, it is by no means conclusive. The intention of the parties, however disclosed, is conclusive on the question of the passing of title. See: State v. Mobile Stove & Pulley Mfg. Co., 255 Ala. 617, 623, 52 So.2d 693, 698.

■ Under the Uniform Sales Act (Code 1940, Tit. 57, § 1 et seq.) the passing of title between a seller and a buyer depends upon the intention of the parties. Hyatt v. Reynolds, 245 Ala. 411, 414, 17 So.2d 413, 415. Section 24, Tit. 57, provides as follows:

"(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such times as the parties to the contract intend it to be transferred. (2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

We are of the opinion that title did not pass at the time of delivery. Title passed when the parties intended, and the facts indicate that this was not until installation and acceptance.

■ In determining coverage under a statute levying a tax, as is the situation here, the rule is that such statute is to be construed strictly against the taxing power and liberally in favor of the taxpayer. State v. T. R. Miller Mill Company, 272 Ala. 135, 139, 130 So.2d 185; State v. Birmingham Bolt Company, 271 Ala. 528, 530, 125 So.2d 520; State v. Grayson Lumber Company, 271 Ala. 35, 38, 122 So.2d 126; State v. Helburn Co., 269 Ala. 164, 167, 111 So.2d·912; Al Means, Inc. v. City of Montgomery, 268 Ala. 31, 36, 104 So.2d 816; State ex rel. Woodruff v. Centanne, 265 Ala. 35, 38, 89 So.2d 570; State

**616**

v. Reynolds Metals Company, 263 Ala. 657, 661, 83 So.2d 709.

We are clear to the conclusion that the rule, as applied in this case, conflicts with the statutory definition of a sale, that is, a "closed transaction"; that the statute prevails over the rule; and that the trial court correctly held that the sales tax assessment against Continental was erroneous.

The judgment is affirmed.

Affirmed.

LIVINGSTON, C. J., and COLEMAN and HARWOOD, JJ., concur.