243 So.2d 713

**STATE of Alabama**

v.

**ALTEC, INCORPORATED.**

**6 Div. 54.**

Court of Civil Appeals of Alabama.

Feb. 3, 1971.

MacDonald Gallion, Atty. Gen., and Willard W. Livingston, Counsel, Dept. of Revenue, and Asst. Atty. Gen., Herbert I. Burson, Jr., Asst. Counsel, Dept. of Revenue and Asst. Atty. Gen., for State of Alabama.

Robert McD. Smith and John E. Grenier, Birmingham, for appellee.

THAGARD, Presiding Judge.

This case arose as an appeal from a final assessment of sales tax against the appellee by appellant, State of Alabama.

The appellee, Altec, is an Alabama corporation and maintains its principal place of business in Jefferson County, Alabama. It manufactures, assembles and delivers equipment and machinery installed on vehicles used principally by municipalities, electric co-ops and public utility companies in the repair, maintenance, construction and installation of telephone and electric power and light facilities. In most instances the machinery and equipment are installed on a chassis ordered and purchased by the customer and shipped to Altec by the chassis manufacturer. In other instances, appellee acquires the chassis, installs the equipment and sells the entire unit to the customer.

Altec does not build or sell any standardized units. Each customer establishes its own particular specifications which Altec must meet in order to sell the unit. A sales engineer makes the initial contact with a prospective customer and decides if that customer needs or can use an Altec unit. If a unit can be used, and the prospect is interested, Altec will send a demonstrator (a typical unit) to the customer's place of business. The sales engineer then will demonstrate the capabilities of the unit, and the sales engineer and customer will discuss variations from the demonstrator unit to meet the particular needs of the customer and will write particular specifications for manufacture and assembly of such unit.

If Altec receives an order, ordinarily the customer will place its order for a chassis with a local truck dealer. Upon delivery of the chassis to Altec, the unit will be manufactured and assembled according to specifications. When the unit is ready for delivery to the customer, Altec uses one of three basic means of delivery: (1) common carrier; (2) Altec's own driver; or (3) the customer's driver. We are only concerned in this case with the third method of delivery mentioned above, and then only on sales made to out-of-state customers. Appellee paid sales taxes on sales made to customers within the state, and the Stated admitted that no tax was due on sales to out-of-state customers if delivery was made to the out-of-state location by common carrier or by Altec's own driver.

Altec always insures the unit while it is in transport to the customer, even when the customer's driver is taking the unit to the customer.

Within seven days after the unit reaches the customer's place of business, the Altec sales engineer arrives. He and the customer visually inspect the unit and then the engineer operates the unit on a typical job site to make sure the unit performs according to the customer's need and specifications. If for some reason the unit needs some adjustment in order to perform adequately (as in 70% of the cases) a local machine shop is employed. In approximately 23% of the cases, the unit must be returned to Birmingham and the customer never pays any part of the expense of the adjustment.

The president of Altec testified that it was company policy that the customer did not operate the unit in any manner after delivery, except to test the roadability, until the Altec sales engineer tested the unit with the customer.

The State contends that the sale ripened into a "closed transaction" when the customer or his agent picked the unit up at appellee's place of business in Birmingham; whereas, appellee contends that the sale did not ripen into a closed transaction until the customer, with the assistance of appellee's sales engineer, had inspected and tested the unit at his own place of business and determined that it was built according to specifications, would do the job required of it in customer's locale, and indicated his acceptance of the unit. These conflicting contentions make up the issue in this case.

The appellant's assignments of error are all based on Judge William Barber's final

decree which found that the transactions were not closed or completed in Alabama and, therefore, the proposed assessment of sales taxes against the appellee was improper and should be and was set aside.

The State contends that the only determination to be made by this court is whether the facts in this case bring the Altec transactions within the purview of the opinion in Hamm v. Continental Gin Company, 276 Ala. 611, 165 So.2d 392, or within the purview of Rite Tile Co. v. State, 278 Ala. 100, 176 So.2d 31.

In the *Continental* case, supra, the gin company had its manufacturing plant in Prattville, Alabama, and sold gin equipment throughout the United States and the world. The equipment which was the subject of litigation in the *Continental* case was gin equipment manufactured in Prattville but picked up by the out-of-state purchaser with his own transportation and transported to an out-of-state location. The State contended in that case that the transaction was completed in Alabama in that delivery to the transportation and agent of the purchaser constituted acceptance of the merchandise and in effect the merchandise had been appropriated to the contract by this acceptance. The State, in asserting this position, relied on its Regulation I14–012. The gin company proved that gin equipment delivered to the transportation of the purchaser was broken down into many segments and parts and that the passage of title of the gin from Continental to the purchaser did not occur until the gin was erected and operating satisfactorily at the site of the purchaser in another state. The trial court had determined that the sales were in interstate commerce and not taxable. The Supreme Court affirmed, holding inter alia, (1) that the intention of the parties determines when a contract to sell is executed and such intention is a question of fact and not of law, (2) that the place of actual delivery is of great importance in determining whether there was an intention to pass title, but it is by no means conclusive, and the intention of the parties, however disclosed, is conclusive on the question of the passing of title, (3) that title passed when the parties intended, and the facts in the *Continental* case indicated that this was not until installation and acceptance, and (4) that administrative construction of a statute is highly persuasive authority where it has been in force for many years, but is not binding on state, its agencies, or the courts.

The second case which construed the statute and the regulation which are under consideration in the instant case was Rite Tile Company v. State, supra. The taxpayer had its place of business in Mobile, Alabama, and sold tile in Alabama and in other states. The tile was shipped to the out-of-state contractor by common carrier or delivered by the taxpayer to the contractor in the other state or picked up by the out-of-state purchaser in his own transportation at the place of business of the taxpayer. The only mode of delivery which gave rise to controversy was the last mode above. The State contended that the transaction was closed when the out-of-state contractor accepted the tile in Mobile and the tile was placed upon his transportation. The Supreme Court upheld the contention of the State. However, there was no evidence that there was anything left for the seller to do after loading the tile on the purchaser's truck and the purchaser had no option except to pay for the tile. For aught disclosed by the evidence neither Rite Tile Company nor its agents, servants, or employees would ever see the tile again.

Appellee made proof (1) that the trade custom was that the sale was not completed until the unit had been inspected and tested at the purchaser's locale and there accepted by the purchaser, (2) that appellee assumed responsibility for any damage done a unit in transport, no matter by whom transported, and insured itself against such loss, (3) the purchaser was not to use the unit until after the sales engineer had arrived and inspected and tested

the same and the purchaser had then agreed to accept it, and (4) the purchaser did not become indebted for the sales price of the unit and was not billed therefor until inspection, testing and acceptance.

Appellant refuted none of the foregoing facts but stands on its Regulation I14–012 which reads in pertinent part as follows:

" 'Property is not sold in interstate commerce when the buyer takes actual possession of the goods in this state or when an agent of the buyer accepts delivery for him to make delivery outside the state at the buyer's direction. Act No. 100, Section 3; Title 51, Section 786(4).' (Emphasis supplied)"

In the case of State v. Matthews Electric Supply Co., 284 Ala. 9, 221 So.2d 126, a more recent case than the *Continental Gin* and *Rite Tile* cases, supra, the Supreme Court said:

"Under the provisions of Tit. 57, § 24, Code 1940, the intention of the parties determines when a contract to sell is executed, and to ascertain that intention, regard must be given to the terms of the contract, the conduct of the parties, usage of the trade and the circumstances of the case; and such intention is a question of fact rather than one of law. Hamm v. Continental Gin Co., 276 Ala. 611, 165 So.2d 392; American Automobile Ins. Co. v. English, 266 Ala. 80, 94 So.2d 397, and cases there cited.

"While actual delivery is of great importance in determining whether there was an intention to pass title, it is by no means conclusive. The intention of the parties, however disclosed, is conclusive on the question of the passing of title. Hamm v. Continental Gin Co., 276 Ala. 611, 165 So.2d 392; State v. Mobile Stove & Pulley Mfg. Co., 255 Ala. 617, 52 So.2d 693.

\* \* \* \* \* \*

"When the evidence is conflicting, and it was heard by the trial court ore tenus, strong presumptions are indulged on appeal in favor of the correctness of the trial court's decision, and it will not be disturbed unless plainly wrong or unjust. State v. City Wholesale Grocery Co., 283 Ala. 426, 218 So.2d 140, and cases there cited." (284 Ala. at pages 11 and 12, 221 So.2d at page 128)

We are of the opinion that there was ample evidence to support the finding of fact and judgment of the trial court, and, as said by the Supreme Court in the *Matthews* case, supra, "we cannot say that the trial court's finding from the evidence was 'plainly wrong or unjust' "

Affirmed.